MAYES *et al.* v. THOMPSON.

[91 South.  275.  No. 22057.]

1. CHATTEL MORTGAGES. *Where induced by buyer's fraud, seller may recover from buyer, unless property has passed to bona-fide purchaser or mortgagee.*

Where the owner of property is induced to sell it by a fraud perpetrated on him by the purchaser, he may rescind the sale and recover possesion of the property while it remains in the purchaser's possession, but cannot do so if the purchaser has resold or mortgaged it to a *bona-fide* purchaser or mortgagee for value without notice of the original owner's claim thereto.

2. SALES. *In a replevin action for goods sold, the burden is on seller to prove draft given in payment is worthless.*

Where the owner of property accepts from a purchaser thereof in payment therefor a draft drawn by one bank upon another, he can rescind the sale and recover the property, if the draft given him is worthless; but in an action of replevin involving his

128 Miss.—36

right so to do the burden of proving that the draft is worthless is on him.

3. SALES. *Elements of "bona-fide purchase" stated.*

The essential elements of a *bona-fide* purchase" within the *bona-fide* purchaser for value rule, are a valuable consideration, the absence of notice, and the presence of good faith.

4. SALES. *Attorney's promise to render professional services is a valuable consideration within bona-fide purchaser rule.*

A promise by an attorney at law to render professional services in exchange for property purchased is a valuable consideration therefor within the *bona-fide* purchaser for value rule:

5. SALES. *Methods of protecting bona-fide purchaser, having paid part of price, and other claimants, stated.*

A *bona-fide* purchaser for value, who has partially performed his contract for the payment for the property purchased before notice of a prior claim thereto, is within the protection of the *bona-fide* purchaser for value rule, but to what extent must be determined in each case by the relative equities of the adverse parties. This protection may be accorded, either by permitting the purchaser to retain a proportionate part of the property purchased, by giving him a lien on the property purchased to the extent of the consideration actually paid, or by permitting the purchaser to retain the property and giving to the prior owner or lienor a lien thereon to the extent of the unpaid purchase money.

APPEAL from circuit court of Hinds county.

HON. W. H. POTTER, Judge.

Action by L. L. Mayes and another against W. E. Thompson. Judgment for defendant, and plaintiffs appeal. Reversed and remanded.

*Mayes & Mayes,* for appellant.

At the trial of this case in the lower court the appellants, Mayes and Crisler, made out a *prima-facie* case by providing that they acquired the automobile in controversy by bill of sale from J. C. McComber, who was then in possession of the automobile in Jackson, Mississippi, claiming to be the owner thereof and was driving and treating the automobile in every respect as though it was his own. *Roach*

v. *Anderson,* 28 Miss. 234. "Possession of personal prop-
erty, such as a negro slave, is *prima-facie* evidence of title in
the possessor, and such title is presumed to be *bona-fide* in
the absence of proof to the contrary.

The second instruction, also, is correct, as a general rule,
and should have been granted. Taken in connection with
the instruction above considered, it stated a proper rule to
the jury, which appears to be justified by the state of facts
appearing in evidence. *Davis* v. *Loftin,* 6 Texas, 489, and
especially 497.

The appellee, Thompson, sought to meet and overcome
the *prima-facie* case thus made out by Mayes and Crisler,
by showing that McComber, *alias* Berger, obtained the au-
tomobile from him, Thompson, in exchange for a draft, and
that Thompson has never collected any money on that
draft.

Thompson contends, and his attorney so argued at the
trial, that the bare fact that they proved that Thompson
has not realized any money on this draft, is they say, in
itself, proof of fraud or swindle perpetrated by McComber
on Thompson; and that, although they admit that when
Thompson received the draft from McComber, he delivered
actual possession of the automobile to McComber and that
it was Thompson's intention and aim thereby, at the same
time to give McComber title to the automobile and to al-
low him to drive it off and to treat it as his own and to
hold it out to the world as being his, McComber's, property,
and although it further appears, that McComber, clothed
with this ostensible or real ownership, has disposed of the
automobile to innocent third persons for value, still they
say that this alleged fraud or swindle would defeat Mc-
Comber's title and would defeat the title of the innocent
third persons.

In response to that, we say that the position which our
opponents have taken is untenable; that in the first place
there is no proof in this record that McComber defrauded
or swindled Thompson; and, in the second place even if the
proof was sufficient to show that McComber defrauded or

swindled Thompson and obtained this automobile from him by means of fraud or swindle, still under the law, the title of Mayes and Chislér, who are innocent third purchasers for value from McComber, would be paramount to that of Thompson. *Henshaw* v. *Bryant,* 5 Ill. 97.

We find that the law is well settled in Mississippi and in Texas, and in the vast majority of the states in the Union, that although as between the original parties, a sale may be avoided by the vendor and the vendor may retake the chattel where the vendee takes possession by fraud; but the courts are all uniform in their holding that in order to avail himself of the opportunity to rescind the contract and retake the chattel, the vendor must act before his vendee has disposed of the chattel to an innocent third purchaser. These decisions are all based on the idea that one of two innocent parties must suffer loss and that since it was the original vendor who made it possible for the vendee to perpetrate the fraud, the original vendor must be the one to bear the loss. *Hall* v. *Hinks,* 21 Md. 406; *First Nat'l Bank* v. *Cook,* 70 Miss. 587; Fraud: *Davis* v. *Loftin,* 6 Texas 489; *Sadler* v. *Lewers,* 42 Ark. 184; *Brundage* v. *Cam,* 21 Ill. 336; *Depew* v. *Robards,* 17 Mo. 580.

This principle is illustrated by the case of *Mowrey* v. *Walsh,* 8 Cow. 238, where it was held that, although one obtains goods by a fraudulent purchase, under a forged letter of credit and guaranty, yet, if he afterwards sells them to a *bona-fide* purchaser, without notice of the fraud, the property passes to the purchaser. To the same effect is the case of *Parker* v. *Patrick,* 5 T. R. 175, 8 Mo. 139. The law protects the honest purchaser, where the owner, although induced by fraud or mistake, has voluntarily given to another apparent right of property of sale. 35 Cyc, page 358, par. D; 35 Cyc, p. 359, par. F; *Foster* v. *The State,* 86 So. 513 (Miss.); *The Railroad* v. *Phillips,* 68 Ill. 553; *Patterson* v. *Steiner,* 17 So. 688; *Chicago Dock Co.* v. *Foster,* 48 Ill. 507; *Perkins & Gray* v. *Anderson,* 65 Iowa, 398; *Wilks* v. *Key,* 23 So. 6; *Spira* v. *Hornthall,* 77 Ala. 137; *Titcomb* v. *Wood,* 28 Me. 561; *Ditson* v. *Randall,* 33 Me. 202; *Rawley* v. *Bige-*

*low,* 23 Am. Dec. 607; *Sinclair* v. *Healey,* 80 Am. Dec. 589; *Single Mfg. Co.* v. *Sammons,* 49 Wis. 316; *Arendale* v. *Morgan & Co.,* 5 Snead (Tenn.) 703; *Tourtellott* v. *Pollard,* 74 Me. 418; *Ashland Block Ass'n* v. *Thompson & Co.,* 94 Ill. Appeal 501.

WHERE ONE OF TWO INNOCENT PARTIES MUST SUFFER. As is stated above there is a well-settled and thoroughly understood rule of law which is enforced in all of the states, to the effect that where one of two innocent parties must suffer loss by fraud of another, the person who enables the commission of the fraud must suffer the loss. *Mich. Central R. R. Co.* v. *Phillips,* 60 Ill. 190; *Perkins & Gray* v. *Anderson,* 65 Iowa, 398; *Spira* v. *Hornthall,* 77 Ala. 137; *Hall* v. *Hicks,* 21 Md. 406; *Dephew* v. *Robards,* 17 Mo. 580; *Ashland Block Co.* v. *Thompson,* 94 Ill. Appeals, 501.

BONA-FIDE PURCHASERS FOR VALUE. Who are *bona-fide* purchasers for value? The notice and consideration are matters which are all clearly defined and discussed under 35 Cyc, page 345, *et seq.,* and in the authorities cited thereunder. 35 Cyc, pages, 345, 346, 347, 348, 349, 350, 351, and 352.

CONSIDERATION. 1. IN GENERAL. To constitute one a *bona-fide* purchaser and entitle him to protection as such, he must have purchased not only without notice of defects in the title, but also for a valuable consideration, and he cannot be considered as a *bona-fide* purchaser until he has actually paid the purchase price, or become irrevocably bound for its payment.

2. PAYMENT OF VALUE. A. In General. To constitute a valuable consideration within the application of the above rule, it is necessary that the purchaser should part with something of value, incur some new obligation, relinquish some security, or do some act on the faith of the purchase which cannot be retracted and which would leave the buyer in a worse position if his purchase should be set aside, a mere agreement by the buyer which he can avoid, in case his title proves defective, being insufficient. It is not, however,

necessary that the consideration should be paid in money, or that it should be paid directly to the seller. The consideration paid should be fair and such as would not excite surprise or suspicion, and while it is not necessary that it should be for the full value of the property, yet where the consideration is inadequate and the transaction is not in the usual course of business, or there are other suspicious circumstances sufficient to put the buyer on notice, he cannot claim any protection as a *bona-fide* purchaser. *Bowers* v. *Jones,* 86 So. 711 (Miss.).

*Alexander & Alexander,* for appellee.

POSSESSION OF THE AUTOMOBILE DID NOT CONFER TITLE. We do not know of any branch of law that has such an overflow of cases as sales. Necessarily each case must stand on its own peculiar facts. It is therefore specially important to cite the leading cases in our own state, which are controlling. Our friends and opponents have cited numerous cases from digests and distant state reports and argued at great length in their brief. They have indeed vigorously fought for the automobile in question. To our client, Mr. Thompson, there is involved in this case whether he shall lose his Buick automobile, valued at one thousand dollars, for which he paid his hard earned money, while for appellants, there is simply involved the chance of enriching themselves the value of the said automobile, and they stand to lose nothing by the suit. We deed it only necessary to refer to the Mississippi cases on this question: *Ketchum & Cummings* v. *Brennan,* 53 Miss. 607; Code, sec. 2893; *Mount* v. *Harris,* 1 S. & M. 185; *Lewis* v. *Gilmer,* 3 S. & M. 560; *Patton* v. *McCane,* 15 B. Mon. 555; *Unger* v. *Abbott,* 92 Miss. 563; *Lee* v. *Portwood,* 41 Miss. 109.

THERE WAS NO SALE TO BERGER, HE ONLY OBTAINED POSSESSION OF THE AUTOMOBILE SURREPTITIOUSLY AND BY FRAUD. The courts have generally recognized the distinction between a sale, or actual transfer of title or the mere delivery of possession by virtue of fraud or criminal act.

The statement of facts and conclusions drawn therefrom by counsel for appellant are misleading, and without attempting to point out specifically their misconception of the true state of facts we merely refer the court to the record, and invite a careful reading of the testimony. On counsel's views of the facts, they have based their authorities, and owing to the voluminous cases and volumes on sales, there is no difficulty in compiling cases that are apparently controlling, but which can easily be distinguished upon careful analysis and application.

Eminent text-book writers, have, after exhaustive study of the various decisions, condensed into general principles the contentions to which we invite this court's attention. Benjamin on Sales (5 Ed.), 1906, page 457; Williston on Sales, page 1045, sec. 625; *McQuale* v. *North Am. Smelting Co.,* 57 Atl. 948; *Boulden* v. *Gough,* 54 Atl. 693; *Reed* v. *King,* 12 S. W. 772; *Strubbee* v. *Railroad Co.,* 39 Am. Rep. 251; *Emerson* v. *Fisk,* 19 Am. Dec. 206; *Frank* v. *Ingalls,* 41 Ohio St. 560; *McQuale* v. *Smelting Co.,* 57 Atl. 984 (*supra*); *Barker* v. *Dinsmore,* 13 Am. Rep. 697.

The rule has also been laid down that a *bona-fide* purchaser is not protected where his vendor obtained the goods by means of a felony. *Russell* v. *Fairer,* 18 La. 585, 36 Am. Dec. 662; *Railroad Co.* v. *Taylor,* 45 S. W. 749; *Arendale* v. *Morga,* 5 Sneed. (Tenn.) 703.

It would seem that numerous cases could be found identical with the case at bar, but it seems that only in late years has the art of swindling become so highly developed. However, we are fortunate in having one case that is identical, strangely so, in minute detail, and we respectfully refer the court to the remarkable similarity of facts. This case is the recent case of *Kapp* v. *Lyman,* 186 Pac. 385 (1919).

The only act, which was committed on the part of respondent, which would give any color of ownership to the automobile in the hands of the fraudulent procurers thereof, was the act in delivering possession to the latter. It has long been held that mere delivery of possession does not

imply a transfer of title, where personal property is concerned. At most, it is only *prima-facie* evidence of such transfer. 1 Williston on Sales, sec. 313. To the same effect respondent cites 35 Cyc, p. 360, particularly the case of *Globe Milling Co.* v. *Minneapolis, etc., Co.,* 44 Minn. 153, 46 N. W. 306. Conditional sales are often made, under which title is effectually reserved in the vendor, who rests secure against any claim of alleged innocent purchaser. *Van Allen* v. *Francis,* 123 Cal. 474, 56 Pac. 339.

Another late case with considerable bearing on this case at bar, is the case of *Windle* v. *Citizens' National Bank,* 216 S. W. 1023 (1919). The rule, as announced in 2 Mecham on Sales, sec. 887, is that if a seller, through a fraud or misrepresentation, is induced to part with his goods in the belief that he is selling to one man when in fact he is selling to another, there is no sale that has taken place, and he can recover his goods even in the hands of an innocent third person. No title passes out of the owner, and the person who so fraudulently obtains the goods can therefore convey none to any person, however innocent, and the owner may recover his goods not only from the wrongdoer himself, but even from a *bona-fide* purchaser for value and without notice. There is no occasion for rescission of the sale, for there is no sale to rescind; the whole transaction is void *ab initio.* See 35 Cyc, pp. 360, 361; also, 16 Cyc, p. 773. Counsel cite the cases of *Bank* v. *Cook Carriage Company,* 70 Miss. 587, and *Roach* v. *Anderson,* 28 Miss. 234. An examination of these cases will show clearly that they are not applicable.

As to the Bona Fides of Mayes and Crisler. The learned circuit judge held that Mayes and Crisler got no title title to the automobile in question and the question of their *bona fides* as purchasers, did not enter into his decision. It should not enter into this court's consideration, but our friends have so strenuously insisted that a judgment here be rendered in their favor, that we shall respectfully make a few observations, which we think pertinent. It would be a distressing outcome and devoid of all

justice, as we view it, for Mr. Thompson to lose his automobile in the manner in which appellants seek to recover it, but to be deprived of the automobile before ever allowing a jury to determine whether they had knowledge of facts sufficient to put them on their guard, would be a new character of legal precedent, not yet named. Ruling Case Law, No. 24, page 318, also note page 312, sec. 597.

Counsel cite some cases announcing the doctrine that of one of two innocent parties, the person who enables the fraud must suffer. The application of this rule has been often distorted and disfigured, but it does not apply where the party wronged has not departed with the title, but possession merely has been obtained by a fraud or criminal act. Let us keep this distinction ever before us.

In summarizing our contentions on the direct appeal, we would respectfully submit to this court that: First: There was no sale of the automobile in question by the defendant Thompson to McComber or Berger, for the reason that the essential elements of a sale at law were not complied with, and the title to said automobile is still in defendant W. E. Thompson. Second: McComber or Berger's possession of the automobile in question was obtained by a criminal act of fraud, consisting of a felony tantamount to theft, and a swindle under the Texas law, and he could not convey a title to the said automobile, even to an innocent purchaser. Third: The plaintiffs' took the said automobile for a pre-existing debt, and did not pay any money or thing of value for the same, and cannot be held to be *bona-fide* purchasers. Fourth. The plaintiffs acquired the car, together with money and other things of value aggregating a large sum for a grossly inadequate consideration, and under circumstances which at law would put a reasonable man on inquiry as to the want of title of said Berger or McComber to the said automobile, and the plaintiffs are therefore not innocent purchaser of the said car for value and without notice. Fifth: The plaintiffs did not acquire title to the said automobile in question, for the reason that there was no valid sale of said car to them by Berger of Mc-

Comber in that there was no valid consideration, and the alleged bill of sale given by the said Berger or McComber to plaintiffs was forged and signed by a fictitious name.

SMITH, C. J., delivered the opinion of the court.

This is an action of replevin, in which the appellants were the plaintiffs and the appellee the defendant in the court below. At the close of the evidence the court refused to instruct the jury to find for the plaintiffs, but instructed it to find for the defendant. There was a verdict and judgment accordingly.

The property sought to be replevied is an automobile, which the appellants claim to have purchased from a man by the name of McComber; the consideration therefor being professional services rendered and to be rendered. The appellants are attorneys at law and McComber, while under arrest by the chief of police of Jackson, Miss., "on suspicion," but without any charge having been made against him for the commission of any crime, employed the appellants to obtain his release and to defend him against any charge that might be brought against him. In order to compensate them therefor, he executed to Crisler a bill of sale for the automobile in question, valued by the appellants themselves at one thousand dollars, a diamond ring valued by them at three hundred and fifty dollars, two hundred dollars in cash, a typewriter, and a watch, the values of which do not appear from the evidence. The appellant obtained McComber's release from custody before any formal charge was made against him, by having him to execute a bail bond in the sum of three hundred dollars, on which they were sureties, and on his release McComber disappeared, and has not been heard from since. On the day following the execution of this bond a charge of forgery was lodged with a committing magistrate by the police against McComber. No forfeiture has been taken on this bond, and its validity is challenged by the appellee

Some days after the automobile had been delivered to the appellants by McComber, the chief of police of Jackson, Miss., advised the appellants that the appellee claimed to be the owner of the automobile, whereupon it was delivered by them to the chief of police under what the appellants supposed was an agreement that it would be held by him until the appellee's claim thereto should be adjusted, but was thereafter delivered by the police to the appellee, and was then replevied by the appellants. The appellee lives in Hillsboro, Tex., and there sold the automobile to a man, who gave his name as Berger, for one thousand, six hundred and fifty dollars, accepting in payment therefor a draft, signed by the Union National Bank of Springfield, Mo., in favor of Berger, on the Hanover National Bank of New York City, for one thousand, six hundred and seventy-five dollars, and agreed to pay Berger the twenty-five dollars difference between the price of the automobile and the amount of the draft, when the draft should be collected.

No reservation of title to the automobile was retained by Thompson until the draft should be collected, but the draft was accepted in payment therefor. Berger immediately took possession of the automobile, and some months thereafter appeared with it in Jackson, Miss., under the name of McComber, where he was arrested as hereinbefore set forth. The draft given by Berger for the automobile was deposited by Thompson with his local bank for collection, and was afterwards returned to him by the bank; the reason given therefor by the bank being that "the check was turned down." There was no evidence that the draft was not drawn as it purports on its face to have been, or that it had been presented for payment to the Hanover National Bank.

The errors assigned are the refusal of the peremptory instruction requested by the appellants and the granting of the one requested by the appellee. One of the contentions of the appellee is that, because of the fraud perpetrated on him by Berger in giving him a worthless draft

for the automobile, no title to the automobile passed to Berger, and consequently, since Berger could not convey to the appellants any greater right to the automobile than he himself possessed, the appellee is entitled to recover the possession thereof, notwithstanding that the .appellants may have purchased it from Berger without notice of the appellee's right to reclaim it. This argument assumes that the draft was worthless, and for the purpose of answering it we will also so assume, though that question will be hereinafter dealt with.

If the transaction between the appellee and Berger did not result in the transfer of the title to the automobile to Berger, but merely in the transfer of the possession thereof, the appellee is entitled to recover it, even against a *bona-fide* purchaser from Berger without notice; but, if it resulted in the transfer of the title to Berger, the appellee would have had the right to recover the car while it remained in Berger's hands, but has no right to recover it against a *bona-fide* purchaser for value without notice. *Preston* v. *Threefoot* (Miss.), 24 So. 703; Benjamin on Sales (5 Ed.) 457; Williston on Sales, 1045.

The question for decision in this connection then is: Did the appellee intend to transfer to Berger the title to the car, or simply the possession thereof? The evidence leaves the answer to this question in no sort of doubt, for it is manifest therefrom that the appellee delivered the car to Berger in exchange for the draft with the intention of vesting him with the title thereto, and this intention can be in no wise changed by the fact; if such it be, that the appellee was induced so to do by a fraud perpetrated upon him by Berger.

The contentions of the appellants in effect are, first, that it does not appear from the evidence that the draft was worthless and that the burden of so proving was on the appellee; and, second, that they are *bona-fide* purchasers for value. The first contention is sound, for if the draft was drawn as it purports on its face to have been, and would have been paid on presentation, no fraud was per-

petrated on the appellee by Berger, and for that reason the judgment of the court below must be reversed. But it will be necessary for us to decide the second question also; for, if the appellants are entitled to recover possession of the automobile under the *bona-fide* purchaser for value rule, is will not be necessary to remand the cause, but final judgment can be rendered here.

The *bona-fide* purchaser for value rule had its origin in equity and is:

"That a purchaser in good faith for a valuable consideration and without notice of the prior adverse claims is protected against certain suits brought by the holders of such claims. The essential elements which constitute a *bona-fide* purchase are therefore three—a valuable consideration, the absence of notice, and the presence of good faith." 2 Pom. Eq. (4 Ed.), section 745.

We are concerned here with the first of these elements only, for the appellants purchased the automobile without notice and in good faith.

The promise of the appellants to render to McComber the services contracted for is a valuable consideration within this rule, but only a small part of such services have been in fact rendered, to-wit, the obtaining of McComber's release on bond, and not only must the consideration be valuable, but it must have been paid, or, if it consists of a promise, the promise must have become irrevocable before notice of a prior claim. The appellants will be under no obligation to render any further services to McComber in event the appellee recovers the automobile, so that the question for decision is whether the appellants are entitled to protection because of the partial performance of their contract with McComber, and, if so, to what extent. That a purchaser so situated is protected is settled in this and most of the other jurisdictions, but to what extent is sometimes a difficult question, and must be determined in each case by the relative equities of the adverse parties. 2 Pom. Eq. (4 Ed.), section 750; 23 A. & E. Ency. of Law (2 Ed.), section 521. This protection may be accorded, either by permitting the purchaser to retain a proportionate part

of the property purchased (*Durst* v. *Daugherty,* 81 Tex. 650, 17 S. W. 388), by giving him a lien on the property purchased to the extent of the consideration actually paid (*Servis* v. *Beaty,* 32 Miss. 52), or by permitting the purchaser to retain the property and giving to the prior owner or lienor a lien thereon to the extent of the unpaid purchase money (*Parker* v. *Foy,* 43 Miss. 260, 5 Am. Rep. 484).

What are the relative equities of the adverse parties here? The appellants have rendered a service to McComber, to-wit, the obtaining of his release from custody, for which they are entitled to compensation; and they are also entitled to protection against any liability they may have incurred on the bail bond. The aggregate value of the property received by them from McComber is one thousand, five hundred and fifty dollars, and the value of the appellee's interest therein, to-wit, the automobile, is one thousand dollars. Should the automobile be awarded to the appellee, there will remain the two hundred dollars in money and the diamond ring, worth three hundred and fifty dollars, and, even should the appellants be called on to pay the penalty of the bail bond, there will remain two hundred and fifty dollars, which will fully compensate them for the services actually rendered. A resort to the automobile, therefore, is not necessary, in order that the appellants may be fully protected, and, in event it shall be made to appear on another trial that the draft given the appellee by Berger for the automobile was worthless, the automobile should be awarded to the appellee.

One of the appellants' contentions is that, for aught that appears to the contrary, the ring may have been fraudulently obtained by McComber, and they may be called on to surrender it also; but this contention is without merit, for the court must act on proof, and not on speculation.

The foregoing views will enable the court below to fully dispose of the cause when it shall be returned thereto, without our deciding the other questions raised by counsel for the appellee.

*Reversed and remanded.*