JONES BAYOU DRAINAGE DIST. *v.* SILLERS, CLARK & SILLERS.

[91 South. 693. No. 22538.]

ATTORNEY AND CLIENT. *Attorneys performing services in creating drainage district held entitled to reasonable fees from district, though without express contract.*

Where the interested citizens of a proposed drainage district held a public meeting, in which it was decided to create such district, and wherein it was decided that three named persons should act as temporary drainage district commissioners, and was also decided that a named firm of attorneys be selected as attorneys for such drainage district, and where the drainage district was subsequently created as planned in said meeting, and the services

of the attorneys selected were used and accepted, and where they prepared all necessary papers and performed other needed services in creating the district, such attorneys are entitled to reasonable fees from the drainage district, even though there was no express contract between the drainage district and the attorneys who rendered such service. The facts stated in the opinion create an implied contract, and the attorneys are entitled to judgment for a reasonable attorney's fee.

APPEAL from circuit court of Bolivar county.
HON. W. A. ALCORN, JR., Judge.
Suit by Sillers, Clark & Sillers against the Jones Bayou Drainage District. Judgment for plaintiffs, and defendant appeals. Affirmed, subject to *remittitur;* otherwise, reversed and remanded.

*R. E. Jackson,* for appellant.

As a matter of fact there was never any appointment made of the commissioners before the permanent organization, there never was any preliminary organization of the district and whatever work was done by the appellees was done upon their own initiative and at their own risk.

It is admitted and agreed, as will be seen from the stenographer's notes at page 177 of this record, that the board of supervisors never did appoint, and never did pass an order of any kind appointing, temporary commissioners in the matter of the organization of the drainage district as required under the laws under which this drainage district was organized.

Appellees probably thought the only employment necessary was the sanction of a few citizens who had assembled at the court house back in May, 1919. This would probably bind the individual citizen but there was no one to bind the drainage district, as none was in existence.

If there was no temporary organization and the appellees were never employed by the commissioners, then the relation of attorney and client did not exist. I submit that

before the temporary commissioners could be bound and liable for any services that appellees might have performed, the relation of attorney and client must first exist. It is alleged in the declaration that the appellees were employed by the said drainage district through its commissioners to organize and create the said district.

The suit is based upon a contract of employment when no contract was ever shown in order to fix the responsibility of paying for services rendered by the appellees. The rule as laid down in all of the textbooks as well as the reports of this state and other states, is that the relation of attorney and client must exist. A contract of employment by the client must be shown in order to fix the responsibility and it is not sufficient that the services were beneficial to him or the result valuable. 4 Cyc. 984. Also at page 985, same volume "The person to be looked to for compensation is not of necessity the one benefited, but the employer."

The right of attorney to demand payment for his services depends on the fact of his employment. He cannot recover from one who did not employ him, however valuable the result of his services may have been to such persons. Chapter on Attorneys at Law, 2 Ruling Case Law, section 115, also section 143, same chapter and volume reads as follows: "As has been already seen the right of attorney to compensation depends upon a contract of employment expressed or implied and it is therefore essential that an attorney suing to recover fees for legal services rendered shall prove the fact of employment. The mere fact that the services rendered were beneficial to the defendant will not of itself entitle the plaintiff to recover therefor. *River* v. *Patty,* 74 Miss. 381, 20 So. 863.

It follows then, there being no contract, between appellees and the Jones Bayou drainage district, it cannot be held to respond in attorney's fees when it was not in existence at the time, and no legal representative to bind the district for any such attorney's fees.

*Roberts & Hallam,* for appellant.

In the brief filed on behalf of the appellees counsel seem to disregard the fact that the Jones Bayou drainage district is a public corporation, and an arm and instrumentality of the state itself, and that the means of its organization, and its rights and powers, are measured and limited by the statute under which it was created. In other words, counsel would have the court itself enact a drainage statute and repeal the act which has been provided by the legislature.

There can be no question that a private corporation, after its organization may, by adoption, ratify contracts made in its behalf by its promoters in the organization period, and thereby bind the corporation for performance of such contract. Rather, after the acceptance of the benefits of such contracts after organization, the corporation will be held estopped to deny its obligation thereunder. We have never for an instant doubted the rule, but it has no applicability in the present case. It applies to private corporations, and not to public corporations which are arms of the government itself, and further it applies to contracts made by promoters with third persons for the benefit of the embryo corporation, and does not apply as between promoters and the corporation itself.

*Cutrer, Smith & Cutrer,* for appellees.

The next assignment of error assigned by Mr. Jackson, is that the relation of attorney and client did not exist between appellees and the drainage district, such as would warrant a recovery by appellees, against the drainage district.

It will be observed by the court, that the permanent commissioners appointed, were the men with whom appellees acted, in the formation of the drainage district. That in pursuance to the direction of the meeting held in Cleveland the three permanent commissioners conferred with

appellees, and undertook through the services and efforts of appellees, to organize the Jones Bayou drainage district. That, as a result of their efforts, the drainage district was duly organized, the bonds sold, and the district completed.

It is true, as stated by counsel for appellant that no written contract was drawn up between the commissioners and appellees. Counsel for appellant argues from this that no relation of attorney and client existed, and cites the case of *Rivers v. Patty,* 74 Miss. 381, 20 So. 863, to sustain his contention.

That case has no application here. The situation involved in this case is entirely different. The permanent commissioners of the drainage district dealt with appellees, as attorney and client, for the proposed district, and later, after having accepted the services of appellees, ratified his every act and service by using the documents, writings, petitions, notices, abstracts, bonds, orders, and all papers drawn for and on behalf of the drainage district, by appellees, in the organization of the said district. After the Jones Bayou drainage district became a corporation legally, organized and functioning, the permanent commissioners wrote the letter heretofore set out in the statement of facts, to appellees, requesting him to turn over to them, the documents, papers, etc., hereinabove enumerated. Rather than repudiating the contract with appellees, or being guilty of such acts as to forbid the implication that the drainage district had repudiated and disallowed, the services of appellees, their every act prior to the organizations, and subsequent thereto, was consistent with appellee's employment by the drainage district.

The relationship of attorney and client may be created by implication, and does not necessarily depend upon express contract. The relation of attorney and client does not necessarily depend upon an express contract. There may unquestionably be a state of facts from which an implied contract or promise to pay an attorney for services rendered, can be justly inferred. *Coleman* v. U. S., 152 U.

S. 96, 38 L. Ed. 368; *Wright* v. *Tebbitts,* 91 U. S. 352, 23 L. Ed. 320; *Trist* v. *Child,* 21 Wall. 441, 450, 22 L. Ed. 623; *In re Paschal,* 10 Wall. 483, 19 L. Ed. 992.

An implied contract will arise when the services are rendered under such circumstances as authorize the party performing to entertain a reasonable expectation of their payment by the party benefited. *Coleman* v. *U. S.,* 152 U. S. 96, 38 L. Ed. 368; 6 Corpus Juris, p. 730, sec. 301; 4 Thompson, Corporations, section 4866; *American Ins. Co.* v. *Oakley,* 9 Paige (N. Y.) 489, 38 Am. Decisions, 561; *Western Bank* v. *Gilstrat,* 45 Mo. 419; *Southgate* v. *Atlantic, etc., R. R.,* 61 Mo. 89, 94; *Munford* v. *Hawkins,* 5 Denio (N. Y.) 355.

It will be observed that no formal action of the board of directors of the corporation, is required to authorize the managing officers to employ counsel. It, therefore, follows that no formal action of the board is required to ratify and adopt the action of the promoter or managing officers in employing counsel.

"If the nature of the contract is such that formal action of its board of directors would not be necessary to the making of it in the first instance, its adoption when made for it by its promoters will not require that formality." 1 Thompson, Corp., section 480; *Battalle* v. *Northwestern Cement, etc., Co.,* 37 Minn. 89, 33 N. W. 327.

It is well settled that a corporation may ratify the contracts or engagements of their managing officers or promoters, either expressly or impliedly, by accepting the benefits of the work done for and on behalf of the corporation. "So, it may, of course, impliedly ratify such engagements, by accepting and retaining any benefits which accrue to it therefrom, in which case it becomes liable, not on the strict theory of contract, but on the principle of estoppel." 1 Thompson Corp., section 480; *Edwards* v. *Railway Co.,* 1 Myline & C. 650; *Paxton Cattle Co.* v. *First Nat. Bank,* 21 Neb. 621; s. c., 33 N. W. 271; *Low* v. *Railroad Co.,* 45 N. H. 370 (leading case); *Bell's Gap R. Co.* v. *Christy,*

79 Pa. St. 54 (doctrine recognized) ; *Rockford & C. R. Co.* v. *Sage,* 65 Ill. 329.

The services performed by appellees are admitted to have been necessary in the creation and organization of the drainage district. It is admitted that the drainage district, after it came into being, utilized all of the documents, papers, petitions, notices, etc., drawn by appellees, in the performance of their employment, and used for the benefit of the drainage district, its formation, and the sale of its bonds. It is admitted that the drainage district, after having become a corporation, and legally, regularly and technically organized, requested by letter, herein above set out, a delivery to appellant of the various documents, etc., hereinabove specifically named.

The ratification, therefore, was in every way complete. Therefore, by recognizing appellees, after organization, the drainage district became liable for the reasonable value of the services rendered by appellees. The law is well settled that when and in the event a corporation, after organization, ratifies the engagements of its promoters, the corporation is bound. This question is discussed at length in a note in 13 Am. State Reports, page 29; *Battalle* v. *Northwestern Cement, etc., Co.,* 37 Minn. 89; *Munson* v. *Syracuse, etc., R. R. Co.,* 103 N. Y. 58, 76; *Penn. Match Co.* v. *Hapygood,* 141 Mass. 145; *Spiller* v. *Paris Skating Rink Co.,* L. R. 7 Ch. Div. 368; *Frankfort Co.* v. *Churchill,* 6 T. B. Mon. 427; 17 Am. Dec. 159; *Whitney* v. *Wyman,* 101 U. S. 392, 12 Am. State Reports, p. 29; *Edwards* v. *Grand Junction Ry. Co.,* 1 Myline & C. 650; *Webb* v. *Direct London, etc., Ry. Co.,* 9 Hare, 128; *Stanley* v. *Birkenhead Ry. Co.,* 9 Sim. 264; *Preston* v. *Liverpool, etc., Ry. Co.,* 7 Eng. L. & Eq. 124; *Petre* v. *Eastern Counties Ry. Co.,* 1 Eng. Ry. Cas. 462; and see *Little Rock, etc., R. R. Co.* v. *Perry,* 37 Ark. 164, 187 et seq., where the doctrine is stated at length upon a review of the English decisions. This doctrine of the English courts has been recognized, to some extent, in this country; and it was held, in *Low* v. *Railroad,* 45 N. H. 375, that a corporation is liable at law upon an

implied assumpsit, for services rendered before it came *in esse,* but which were necessary to perfect its organization, and which, after such organization was perfected, it accepted, and the benefits of which it enjoyed. 12 Am. State Reports, pp. 20-30.

Inferentially, this same question was decided in Mississippi, in the case of *Bank* v. *Orgill Bros.,* 82 Miss. 81. Therefore, we earnestly insist that, in view of the fact that the drainage district received the benefits of the contract with appellees, and expressly ratified their every action by adopting their procedure, and forming a transcript from these proceedings, and submitting the said transcript to the bond attorneys, and directly dealt with appellees, after incorporation by writing a letter to them, requesting the enclosure of his proceedings, that the contract of service with appellees was ratified, approved and the beneficial results retained by the drainage district. On the principles hereinabove announced, as the universal decisions of all of the courts of the United States, the corporation in this case, the drainage district, is primarily liable to appellees.

The supreme court of Mississippi has followed the rule laid down in the leading case of *Lawrence* v. *Fox,* 20 N. Y. 268, which holds that where a person, A, at the request of the defendant, lent to him a certain sum of money, stating at the time, that he was indebted to plaintiff for money borrowed of him in that identical sum, which he had agreed to pay upon the following day, and the defendant, in consideration of the loan at the time of receiving the money, promised to pay it to the plaintiff on the following day, held that the consideration for the promise being valid, an action could be maintained on the promise made by the defendant to A for the benefit of the plaintiff, although the plaintiff was not privy to the contract, or to the consideration. In other words, the decisions in Mississippi sustain the doctrine that a contract for the benefit of a third party is binding upon the person or party who promises to pay the third party, even though there may not have been any contract directly between the two. See *Virginia*

v. *Ruffins,* 1 Miss. 312; *Lee* v. *Newman,* 55 Miss. —; *Barnes* v. *Jones,* 111 Miss. 337; *Dodge* v. *Cutrer,* 100 Miss. 647, 56 So. 455; *Sweatman* v. *Parker,* 49 Miss. 19, 30.

The same is likewise true of those who act for and on behalf of the county, or the drainage district, in its preliminary organization. By section 4434 of Hemingway's Code, the county is authorized to engage in the preliminary steps for the formation of the district, for and on behalf of the district, has wisdom in this case. Therefore, the appellee though having the privilege under the Code, to sue the county for the work, may also sue, as was done in this case, the drainage district, for the benefit of which the services were contracted.

ETHRIDGE, J., delivered the opinion of the court.

This is an appeal from a judgment against the appellant in favor of the appellees for attorney's fees for services rendered in the creation and organization of the drainage district. The drainage district was created under the provisions of chapter 195, Laws of 1912, as amended by chapter 269, Laws of 1914 (Hemingway's Code, section 4434 et seq.). Certain citizens of the territory to be incorporated as a drainage district held a meeting in the courthouse at Cleveland, Miss., for the purpose of deciding whether they would create a drainage district out of the territory along Jones Bayou, a stream that ran through Cleveland, Miss., and Boyle, Miss., emptying into the Sunflower river.

The result of the meeting was the determination to create the drainage district, and the meeting selected Crawford, Ward, and Nowell as commissioners for the proposed drainage district and the firm of Sillers, Clark & Sillers as attorneys for the district, and also a person to act as engineer. After this meeting the appellees proceeded to prepare the necessary papers for the creation of the drainage district, and were in consultation at frequent times with the persons named as temporary commissioners, and

prepared seventeen different papers necessary for the organization of the district, and the district was organized with the aid and assistance of the said firm of attorneys, and the commissioners above named were appointed commissioners of the district.

There was no preliminary allowance of fees and expenses by the board of supervisors for the preliminary work of creating the district, and there was no express agreement between the attorneys and the drainage district commissioners as to the services of the attorneys or the value thereof. After the district was regularly organized as above stated, the commissioners took up with the attorneys the question of attorney's fees, and they failed to reach an agreement as to what was a reasonable fee, or what fee should be paid said attorneys with reference to services rendered and to be rendered. After this conference and failure to agree the drainage commissioners above named addressed to the attorneys the following letter:

"You are hereby requested to deliver to Roberts & Hallam such papers as you have, in the organization of the Jones Bayou drainage district."

Which papers were accordingly delivered by Sillers, Clark & Sillers to Roberts & Hallam, who thereafter represented the drainage commissioners. The testimony shows the fee of Roberts & Hallam was fixed at two thousand dollars, and that the papers prepared by Sillers, Clark & Sillers were used in the organization and continuation of the drainage district.

The plaintiffs brought suit for two thousand, five hundred dollars for their services above stated. Mr. Clark, of this firm, testified as to the value of such service, and qualified as an experienced and capable attorney in reference to said matters, and that the said papers were in proper form and were used by the drainage commissioners and the board of supervisors in organizing the said district. The testimony further shows that five per cent. of the amount of bond issue for the said drainage district would be a reasonable fee for the total services of attorneys in

representing the drainage district.  Several witnesses were introduced by the plaintiffs who testified, as experienced attorneys in such matters, that the services rendered by Sillers, Clark & Sillers were reasonably worth from three thousand dollars to three thousand, five hundred dollars.

The defendants introduced no testimony, but requested a directed verdict, on the theory that there was no contract between the attorneys and the drainage commissioners, and that the court was without power to allow an attorney's fee to the plaintiffs.  The court instructed the jury at the close of the evidence to find for the plaintiffs two thousand, five hundred dollars, with six per cent. interest from January 28, 1920; this being the date when the papers were turned over to Roberts & Hallam, as directed by the letter of the drainage commissioners.

There was no preliminary organization prior to the creation of the district, except as above stated, and there was no contract between the attorneys, the plaintiffs, and the board of supervisors, and the appellant insists that the court was without jurisdiction to allow compensation for the services rendered.  The statutes of the state have restricted the board of supervisors in making contracts in many material ways, and no implied contract, generally speaking, can be established against the board of supervisors in their regular jurisdiction.  The statute, however, creating the drainage district, does not prescribe these limitations and restrictions for the drainage commissioners.  The statute expressly recognizes the right to allow attorney's fees and to pay legal expenses, but is silent as to how the board shall incur said obligations.  The general rule is, in the absence of statute, that a municipal or *quasi* municipal corporation, which accepts the services of persons with whom it has power to make a contract, must pay the reasonable value of such services.

In such matters as drainage districts it would be difficult to anticipate all the possible expenses necessary to be incurred, and many expenses must be incurred during the progress of the work, for which it would be very difficult

to provide by express contract. We think the drainage commissioners have a wider discretion in the matters committed to them than the board of supervisors have under our statutory restrictions. In our view, it is not material that the appellees did not make a contract with the board of supervisors. The statute authorizes the board of supervisors to make contract for the preliminary expenses, and if the district was not created and was never organized, in order to hold the county liable out of the county funds, it might be necessary to have such a contract on the minutes of the board. However, such is not the case before us. Here the district was created, the services and advice of plaintiffs were used by the temporary commissioners, and it was understood, we think, by all parties concerned, that proper compensation would be made for these services. At any rate, the services were rendered and accepted, and were necessary and valuable, and the district ought to pay for such services. The declaration called for two thousand, five hundred dollars, with interest, and testimony shows this amount is reasonable. We think, however, that the interest allowed was improper under the decisions of this court. *Warren County* v. *Klein*, 51 Miss. 807; *Anderson* v. *Issaquena Co.*, 75 Miss. 873, 23 So. 310. If the plaintiffs will remit the interest, the judgment will be affirmed; otherwise, reversed and remanded.

*Affirmed, with remittitur.*