371 So.2d 854 (1979)
WEST CENTER APARTMENTS LIMITED, and First National Bank of Jackson
v.
Earl KEYES.
No. 51167.
Supreme Court of Mississippi.
May 30, 1979.
*855 Watkins & Eager, William F. Goodman, Jr., Michael W. Ulmer, Arlin C. Ruthven, Thompson, Alexander & Crews, Thomas R. Crews, Jackson, for appellant.
McDavid, Edmonson, Bennett, Lotterhos & Sulser, Richard T. Bennett, Craig M. Geno, Earl Keyes, Jackson, for appellee.
Before ROBERTSON, P.J., and SUGG and LEE, JJ.
LEE, Justice, for the Court:
Earl Keyes filed suit in the Chancery Court of the First Judicial District of Hinds County, Mississippi, Honorable J.C. Stennett, presiding, against Windsor Park Limited Partnership (subsequently West Center Apartments, Ltd.) [Windsor], First National Bank of Jackson, Mississippi, [FNB], Kinder Care Learning Centers, Inc., and approximately two hundred ninety (290) individual tenants of the apartment complex, seeking attorney's fees in the sum of twenty-nine thousand three hundred seventy-eight dollars twenty cents ($29,378.20). The chancellor entered a decree for said amount, together with pre-judgment interest on same, and, in addition, held that Keyes was entitled to collect the judgment from an escrow account in the amount of thirty thousand dollars ($30,000) established by First National Bank. Windsor and FNB appeal from that judgment.
Without detailing the many ramifications and business dealings involved, briefly, the facts are that Windsor Park Apartments, consisting of two hundred seventy-nine (279) residential apartments located on a seventeen-acre lot in Jackson, was owned by Windsor Park, Inc., a Mississippi corporation. That corporation was wholly owned by National Building Corporation [NBC], a Tennessee corporation, whose president was Henry Sender. Appellee is an attorney in Jackson and represented the apartment project. His representation began in about November, 1972, and from that time until, or just prior to, December, 1975, he performed considerable legal services for Windsor Park, Inc., and later for Windsor Park Limited Partnership, which subsequently purchased all the assets of Windsor Park, Inc.
Windsor Park, Inc. ran into substantial financial difficulties and in December, 1974, Windsor Park Limited Partnership was formed for the purpose of bringing in new investors to the project, the two general partners being National Building Corporation and Barnmiss Properties, Inc. Windsor Park Limited Partnership entered into an agreement with Windsor Park, Inc. for the purchase of, and it did purchase, all of the assets of Windsor Park, Inc., the purchase price being "an amount equal to the actual costs directly incurred in the construction of the apartment complex," and the sale was subject to the outstanding mortgages, which amounted to approximately four and one-half million dollars. ($4,500,000). The partnership continued to use the same bank account in FNB as that used by the corporation. In December, 1975, appellee submitted to Windsor Park Limited Partnership his bill for legal services rendered as follows:

*856
Incorporating Windsor Park, Inc. $ 350.00
Closing the $2,975,000 loan and
 other services - 1% of loan 29,750.00
Filing fee and expenses 278.20
 ___________
 Subtotal 30,378.20
Less credit for concrete from
 the project used by Keyes - 4,500.00
 ___________
 Total $25,878.20

The bill was not paid and in August, 1976, appellee wrote Mr. Sender and stated that it was necessary, because of the statute of limitations, to have the claim reduced to writing, and he enclosed a promissory note in the above amount which he requested Sender to sign on behalf of the limited partnership and NBC. Appellee received no response to that letter. However, Danny R. Poland, Financial Vice President and Treasurer of NBC, wrote him that the note would not be signed on behalf of the limited partnership but offered to sign same on behalf of Windsor Park, Inc. Upon receipt of that letter, appellee filed suit.
The appellants assign ten (10) errors in the trial below, but the questions presented by the assignments of error will be discussed in different forms.

I.
Did the limited partnership assume Windsor Park, Inc.'s liability to Keyes for attorney's fees?
18 Am.Jur.2d Corporations § 19, at 568 (1965) states:
"A corporation organized to take over the business of a partnership or of an individual may assume the liability of the partnership or the individual and thereupon become liable to the partnership creditors. The assumption may, according to some authorities, be either express, or implied from the circumstances, and proved by any competent evidence which will establish it."
The purchase agreement between Windsor Park, Inc. and the limited partnership provided:
"(8) Purchase price.

The purchase price for the premises shall be an amount equal to the actual costs directly incurred in the construction of the apartment complex on the premises as of the closing date as certified to the partnership by seller and as audited by the firm of Craft Bros., Eastman, Patent, Harold and Wheby."
Mr. Sender, president of NBC and Windsor Park, Inc., testified that he approved appellee's bill for services. We are of the opinion that, at least, there was an implied assumption by the limited partnership of Windsor Park, Inc.'s liability for appellee's fee.

II.
Was the sale of Windsor Park, Inc.'s assets to the limited partnership a bona fide sale?
In Mayes v. Thompson, 128 Miss. 561, 91 So. 275 (1922), elements for a bona fide sale were expressed as follows:
"The bona fide purchase for value rule had its origin in equity and is:
`that a purchaser in good faith for a valuable consideration and without notice of the prior adverse claims is protected against certain suits brought by the holders of such claims. The essential elements which constitute a bona fide purchase are therefore three  a valuable consideration, the absence of notice, and the presence of good faith.'" 128 Miss. at 573, 91 So. at 276.
The record reflects that the limited partnership had knowledge of the fact that Keyes had not received payment for his services. In Vicksburg & Yazoo City Telephone v. Citizens' Telephone, 79 Miss. 341, 30 So. 725 (1901), the complainant sought to subject the property of Citizens' Telephone Company, which had been conveyed to Cumberland Telephone Company, to damages suffered by the complainant for breach of contract by Citizens' Telephone Company. The bill of complaint charged that all property of every kind which had belonged to the Citizens' Telephone Company, except its corporate franchises, had been transferred to the Cumberland Telephone Company and that the Citizens' Telephone Company had gone out of existence *857 and was defunct and that such was the purpose of the transfer. The Court said:
"And where there has been neither a consolidation nor a merger, but a mere sale by one corporation of its property to another, that sale, if permitted by the constitution and the laws as not being against public policy or otherwise illegal, and if made for a valuable consideration in good faith, will pass the property of the selling corporation to the purchasing corporation free from claims of mere simple contract creditors. In every such case the same rule obtains as obtains in the case of a sale by an individual to another individual... . It would be necessary in such case that the complainant should state in his bill that there was fraud, or that the transfer was not made for a valuable consideration, or that the defendant was not a bona fide purchaser. ... The property here has not passed into the hands of a bona fide purchaser from the consolidated company, and is therefore chargeable in equity with the debt (if any shall be established) here asserted... . The Citizens' Telephone Company could not give away its property to the prejudice of the complainant; and an attempted sale by it of this property to the Cumberland Telephone Company, the latter not being a bona fide purchaser, cannot avail to defeat the equitable rights of the complainant asserted in this bill, the property being still in the possession of the Cumberland Telephone Company, not sold to a bona fide purchaser from it." (Emphasis added) 79 Miss. at 353-354, 30 So. at 727-728.
In Mississippi Cottonseed Products Co. v. Planters' Mfg. Co., 159 Miss. 153, 132 So. 96 (1930), the Court stated:
"In the Meridian Light & Railway Co. v. Josie Catar, 103 Miss. 616, 60 So. 657, it was held (in the first syllabus): `Neither law nor equity will permit one corporation to take all the property of another, deprive it of the means of paying its debts, enable it to dissolve its corporate existence, and place itself practically beyond the reach of creditors, without assuming its liabilities.' It was further held that persons who acquire the property of the old corporations other than at a foreclosure sale are not purchasers for value without notice.
In Mahaffey Co. et al. v. Russell & Butler, 100 Miss. 122, 54 So. 807, 945, it was held: `A corporation cannot, to the prejudice of its creditors, give away its assets to another corporation, nor can one corporation defeat the creditors of another by the purchase of its assets even for value, unless such purchase is bona fide; but in either case a purchasing corporation is only liable for the debts of the selling corporation to the extent of the value of the assets actually received.'" 159 Miss. at 165, 132 So. at 99.
After transfer of assets to the limited partnership an account was maintained in the name of Windsor Park, Inc. in FNB. The partnership never opened an account of its own and made use of that account, and the inference is that the limited partnership owned same.
We are of the opinion that the limited partnership was not a bona fide purchaser for value and that it assumed the liabilities of Windsor Park, Inc.

III.
Is there no liability on the limited partnership because the apartments had no net value, above liabilities, at the time of the transfer?
As stated, one corporation cannot prejudice its creditors by giving away or selling its assets to another corporation to the detriment of the creditors, the purchasing corporation is only liable for the value of the assets actually received by it from the selling corporation. Mahaffey Co. v. Russell & Butler, 100 Miss. 122, 54 So. 807 (1911).
Appellant FNB claims that the apartments had no net value at the time of the transfer in December, 1974, and for that reason is not liable for payment of the attorney's fees. FNB further contends that *858 the outstanding indebtedness by Windsor Park, Inc. exceeded the value of the apartments. Mr. Sender testified that, at the time of the transfer, the assets exceeded the liabilities. There is no merit in this contention.

IV.
Is the fee claimed by appellant fair, reasonable and justified?
Appellee had no specific understanding with Windsor Park, Inc., or Mr. Sender, as to the amount of his attorney's fee for services rendered and to be rendered. He submitted a bill for services based upon one percent (1%) of a loan from FNB to Windsor Park, Inc. in the amount of $29,750.00. In Jones Bayou Drainage District v. Sillers, Clark & Sillers, 129 Miss. 13, 91 So. 693 (1922), a suit for collection of an attorney's fee where there had been no express agreement for same, the Court said:
"Here the district was created, the services and advice of plaintiffs were used by the temporary commissioners, and it was understood, we think, by all parties concerned, that proper compensation would be made for these services. At any rate, the services were rendered and accepted, and were necessary and valuable, and the district ought to pay for such services. The declaration called for $2,500, with interest, and testimony shows this amount is reasonable." 129 Miss. at 24, 91 So. at 694.
The chancellor was not manifestly wrong in fixing the attorney's fees and the amount thereof.

V.
Did the trial court err in awarding pre-judgment interest?
The bill of complaint did not charge that appellee was entitled to pre-judgment interest and the prayer for relief did not specifically ask for same. Appellee contends that the general prayer for relief was sufficient to authorize the trial court's award of such interest.
In Rutland v. McIntosh, 121 Miss. 437, 83 So. 635 (1919), the Court said:
"The relief granted the appellee, who was the complainant in the court below, was not that specifically prayed for by him in his bill of complaint, and should not have been granted under the general prayer therein for the reason that it is not supported by any allegation in the bill of complaint." 121 Miss. at 438, 83 So. at 635.
We are of the opinion that the trial court erred in awarding pre-judgment interest.

VI.
Was FNB entitled to priority over appellee insofar as the rent moneys held in escrow ($30,000) were concerned under the terms of the agreement between it and appellant?
As stated, approximately 290 tenants of the apartment complex were made defendants in the bill of complaint. There was confusion, concern and misunderstanding on the part of those tenants as to why they should be sued, and, in order to alleviate the situation, FNB agreed to place ten thousand dollars ($10,000) per month received from the tenants as rent into an escrow account for a period of three (3) months until the sum reached $30,000. A pertinent part of the agreement [See Appendix] follows:
"These funds are to be held in the Special Escrow Account until the lawsuit is settled by the parties or upon final adjudication by the Court, and First National Bank of Jackson agrees that it will not attach or use any of the escrow account as a set-off against any amount owing to it by Windsor Park Limited Partnership."
Appellee contends that such part of the agreement, which was incorporated in the order of the trial court on August 31, 1976, precludes FNB from claiming any prior rights to said fund. The agreement is plain and unambiguous and it does not indicate that FNB waived any of its rights to, or claims in, the escrow funds. Under its deeds of trust, FNB was entitled, as a priority, to all rents received from the apartment *859 complex. Appellee does not dispute the fact that without a waiver on the part of FNB he would have no prior claim to the escrow funds. The chancellor erred in holding that the judgment in favor of appellee had priority to the escrow funds.
The other questions raised and not discussed here have been thoroughly considered, and we find that there is no merit in them.
The judgment of the lower court is affirmed except insofar as it awards pre-judgment interest and grants appellee priority to the escrow account, as to which items it is reversed and judgment is rendered here.
AFFIRMED IN PART; REVERSED AND RENDERED IN PART.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM and COFER, JJ., concur.
BOWLING, J., took no part.

APPENDIX

AGREEMENT
THIS AGREEMENT made and entered into this the 30th day of August , 1976, by and between EARL KEYES, WINDSOR PARK LIMITED PARTNERSHIP, and the FIRST NATIONAL BANK OF JACKSON,
WITNESSETH:
WHEREAS, on August 26, 1976, Earl Keyes, Complainant, filed a Bill of Complaint for Attachment in Chancery in the Chancery Court of the First Judicial District of Hinds County, Mississippi, against Windsor Park Limited Partnership, for services rendered to them as their attorney, and against attachment defendants First National Bank of Jackson, Kinder Care Learning Centers, Inc. and tenants of Windsor Park Apartments,
NOW, THEREFORE, in consideration of the premises, it is mutually agreed between the undersigned parties as follows:
Earl Keyes, Complainant in the Attachment in Chancery suit, agrees to release all attachment defendants except First National Bank of Jackson on the condition that rental income from tenants in the Windsor Park Apartments be placed in a Special Escrow Account at the First National Bank of Jackson in the amount of $10,000.00 on September 1, 1976; $10,000.00 on October 1, 1976; and $10,000.00 on November 1, 1976, until a total of $30,000.00 is attained. These funds are to be held in the Special Escrow Account until the lawsuit is settled by the parties or upon final adjudication by the Court, and First National Bank of Jackson agrees that it will not attach or use any of the escrow account as a set-off against any amount owing to it by Windsor Park Limited Partnership.
IN TESTIMONY WHEREOF, this Agreement has been duly executed by the parties hereto, this the 30th day of August , 1976.
 /s/ EARL KEYES 
 EARL KEYES
 WINDSOR PARK LIMITED PARTNERSHIP
 /s/ CALVIN A. BUCHMAN, V. PRES.
 BY: /s/ BETTYE MAY, A.V.P. 
 National Building Corporation,
 General Partner
 FIRST NATIONAL BANK OF JACKSON
 BY: /s/ T. HARRIS COLLIER, III 
 T. Harris Collier, III,
 Assistant Vice President