MYERS, J., for the Court:
¶ 1. The residuary beneficiaries of a trust established by the last will and testament of John Thomas Wilbanks appeal a grant of summary judgment made by the Alcorn County Chancery Court. In doing so, they present nine assignments of error. We affirm.
PROCEDURAL HISTORY
¶ 2. The appellants, residuary beneficiaries of the trust established by the last will and testament of John Thomas Wilbanks, dated March 15, 1978, filed suit in the Chancery Court of Alcorn County, Mississippi, against Herman L. Gray, the executor of the estate of Gertrude R. Wilbanks, certain legatees under her last will and testament, and the ' Mississippi Baptist Foundation, the trustee of the two trusts established by Mr. Wilbanks’s will, all of whom are appellees.
¶ 3. Charles R. Wilbanks, Sr., a practicing member of the Alcorn County Bar, was a party plaintiff, and therefore the chancellors of that district recused themselves and the supreme court appointed Chancellor Ray H. Montgomery as special chancellor to preside.
¶ 4. There were two primary issues raised in the lower court. The first was whether the two separate wills executed by Mr. and Mrs. Wilbanks on March 15, 1978, were joint wills or mutual wills. The second was whether Mrs. Wilbanks, as executrix of her husband’s estate, made proper distribution of the estate assets to the named legatees.
¶ 5. All parties submitted written authorities, and after oral argument, the special chancellor sustained the appellees’ motion for summary judgment with respect to all issues involving the distribution of the assets of Mr. Wilbanks’s estate and the issue of punitive damages. He reserved the question of whether the March 15, 1978 wills were mutual or joint. When summary judgment was granted, Judge Montgomery found that there was no genuine issue of material fact and that Mrs. Wilbanks had distributed the assets of Mr. Wilbanks in compliance with the provisions of his will. Chancellor Montgomery entered additional findings of fact and conclusions of law supporting his grant of *544 summary judgment as requested in a motion from the appellant.
¶ 6. At a later evidentiary hearing, the special chancellor found that the “wills of Mr. and Mrs. Wilbanks of March 15, 1978, were joint, not mutual, wills; that after Mr. Wilbanks’s death, Mrs. Wilbanks had the legal right to revoke her will of March 15, 1978, and did so by the execution of subsequent wills, specifying in detail the factual basis for the holding.” After these rulings, the plaintiffs filed a motion for a new trial and to have the chancellor recuse himself because of his membership with the First Baptist Church in Canton, Mississippi. The chancellor overruled this motion, and the plaintiffs appealed.
FACTS
¶ 7. John Thomas Wilbanks and Gertrude R. Wilbanks were childless. On March 15, 1978, Mr. and Mrs. Wilbanks each executed separate wills, both of which were prepared by Attorney William L. Sharp, deceased at the time of trial. Sharp had represented Mr. Wilbanks for a number of years and had prepared other wills for him previously. Herman L. Gray, a certified professional accountant, had provided accounting services for Mr. and Mrs. Wilbanks for a number of years. He was also involved in the preparation of Mr. Wilbanks’s earlier wills, as well as the preparation of the wills executed by Mr. and Mrs. Wilbanks on March 15, 1978.
¶ 8. Each of these wills left to the other an amount equal to one-half of the adjusted gross estate as determined for federal estate tax purposes. The remainder of the two wills were different. In item III, paragraph I, of his will, Mr. Wilbanks left to Mrs. Wilbanks “an amount equal to one-half of [his] adjusted gross estate as determined for federal estate tax purposes” diminished by the value of other property interests which might pass to Mrs. Wil-banks either under or outside the will but “in such a manner as to qualify and be allowed as a marital deduction.”
¶ 9. The residuary of his estate was left to the Mississippi Baptist Foundation as trustee of two trusts, Trust A and Trust B. Sixty percent of this residuary was left to Trust A, a charitable remainder annuity trust whose beneficiaries were certain named religious organizations. Forty per-cent of the residuary was left to Trust B, a standard marital trust that did not qualify as a charitable trust. The sole beneficiary of Trust B was Mrs. Wilbanks for her life, with the remainder to go to the appellants and other named relatives. Mrs. Wilbanks was also to receive during her lifetime an amount equal to five percent of the initial fair market value of the corpus of any trust which qualified as a charitable trust, the most she could receive without that trust losing its charitable characters and “all of the net income from that portion of [his] residuary estate that does not qualify for the marital deduction.” The net effect of all provisions of Mr. Wilbanks’s will was to leave his widow one-half of his adjusted gross estate and the maximum allowable income from the other half without jeopardizing the charitable bequest.
¶ 10. The bequest to Trust B was qualified by Item I, Paragraph 2 of Mr. Wil-banks’s will, which provided that all estate taxes and expenses of administration be paid “out of the residue of my estate devised by [Residual Trust B].”
¶ 11. In her will of March 15, 1978, Mrs. Wilbanks left one-half of her adjusted gross estate to her husband, she left her tangible personal effects and her AT & T company stock to her two sisters, and she left five percent of the value of her bank stock to three charities, and the remainder of this half of her estate to twenty-two named individuals.
*545 ¶ 12. Mr. Wilbanks died on June 27, 1978, and his will was admitted to probate on July 3, 1978. Mrs. Wilbanks was appointed as executrix in accordance with the provisions of the will, and Sharp served as her lawyer. Mr. Gray performed the accounting services necessary to prepare and file the federal and state estate tax returns. The adjusted gross'estate of Mr. Wilbanks for federal estate tax purposes was $1,277,801.46. One-half of this amount ($638,900.73) was distributed to Mrs. Wilbanks pursuant to the terms of the will and was claimed as a marital deduction on the estate tax return.
¶ 13. The estate tax return shows that the expenses of administration in the amount of $17,288.50 were actually paid from the gross estate and were never deducted from the assets of Trust B, which resulted in an overpayment to Trust B.
¶ 14. Some of this property was jointly owned, but under the then existing tax statutes and IRS rules and regulations, the total value had to be included in the return unless the actual amount of the joint owner’s contribution could be established by clear evidence. Rather than fight this battle, all jointly owned property was included in the return as if it had been solely owned by Mr. Wilbanks at his death. The specific property comprising this distribution was the home, the life insurance, bank stock, a farm, cash, and other miscellaneous items; and the value used for each item (subject to a slight downward adjustment for the farm) was the value shown in the federal estate tax return.
¶ 15. The remaining one-half of Mr. Wilbanks’s estate, $638,900.72, was divided sixty percent to Trust A and forty percent to Trust B. Stocks and cash having a total value of $383,340.44 were distributed to Trust A. In the initial estate tax return a charitable deduction in this full amount was claimed, but the IRS determined that Mrs. Wilbanks’s income interest in Trust A had a present fair market value $127,655.31. This served to reduce the value of the charitable contribution to Trust A by that amount, resulting in a larger estate tax than that originally computed and paid. Stock and cash having a value of $147,589.89, representing forty percent of the residuary less the state and federal estate taxes, were then transferred to Trust B.
¶ 16. Less than one month after Mr. Wilbanks’s death, July 19, 1978, Sharp prepared and Mrs. Wilbanks executed a codicil to her March 15, 1978, will, changing the residuary beneficiaries. Over the years she executed several different wills at various times, changing the disposition of her assets each time.
¶ 17. On August 14, 1981, Chancellor James E. Bost entered an order closing the estate of John Thomas Wilbanks and discharging Mrs. Wilbanks as executrix. No final accounting was filed, as such was waived in the will. No notice was given to the Mississippi Baptist Foundation, the only other legatee besides Mrs. Wilbanks that was named in the will.
¶ 18. Mrs. Wilbanks died on August 3, 1997, and her last will and testament dated, September 21, 1994, was admitted to probate in the Alcorn County Chancery Court. Mr. Gray was appointed as the executor pursuant to the provisions of her will.
¶ 19. This action was filed on August 15,1997.
ANALYSIS
¶ 20. The appellant raises the following issues for our review:
I. DID THE COURT BELOW ERR BY ACCEPTING APPOINTMENT AS A SPECIAL CHANCELLOR AND BY FAILING TO GRANT A *546 NEW TRIAL AND RECUSING HIMSELF?
II. DID THE TRIAL COURT ERR BY FAILING TO FIND THAT JOHN AND GERTRUDE WIL-BANKS EXECUTED MUTUAL WILLS AND REFUSING TO DIRECT THE PROBATE OF THE WILL OF GERTRUDE WIL-BANKS DATED MARCH 15, 1978?
III. DID THE TRIAL COURT ERR IN SUSTAINING THE MOTIONS FOR SUMMARY JUDGMENT?
IV. DID THE TRIAL COURT ERR IN FAILING TO INCLUDE RELEVANT FACTS AND SEPARATE CONCLUSIONS IN ITS RULING?
V. DID THE TRIAL COURT ERR IN ITS RULING CONCERNING THE ESTATE OF JOHN THOMAS WILBANKS?
VI. DID THE TRIAL COURT ERR IN SUSTAINING THE MOTIONS FOR PARTIAL SUMMARY JUDGMENT IN RELATION TO THE ESTATE OF GERTRUDE R. WILBANKS?
VII. DID THE TRIAL COURT ERR IN SUSTAINING THE MOTION FOR SUMMARY JUDGMENT OF THE MISSISSIPPI BAPTIST FOUNDATION, INC.?
VIII. DID THE TRIAL COURT ERR BY SUSTAINING THE MOTION FOR SUMMARY JUDGMENT OF THE MISSISSIPPI BAPTIST FOUNDATION AS TO THE WITHHOLDING OF FUNDS?
IX. DID THE TRIAL COURT ERR BY GRANTING ATTORNEY FEES AND EXPENSES TO THE MISSISSIPPI BAPTIST FOUNDATION?

Standard of Review

¶ 21. In reviewing a chancellor’s findings of fact, this Court’s discretion is extremely limited. We will not disturb a chancellor’s factual findings “unless the chancellor was manifestly wrong or clearly erroneous, or if an erroneous legal standard was applied. Wherever there is substantial evidence in the record to support the chancellor’s findings of fact, those findings must be affirmed.” Browder v. Williams, 765 So.2d 1281, 1284 (Miss.2000).
¶ 22. This Court employs a de novo standard of review in regard to summary judgment. In doing so, we examine all of the evidence presented in the record in the light most favorable to the party against whom the motion is made. Quinn v. Mississippi State Univ., 720 So.2d 843, 846 (Miss.1998) (citing McCullough v. Cook, 679 So.2d 627, 630 (Miss.1996)). “To avoid summary judgment, the nonmoving party must establish a genuine issue of material fact by means allowable under Rule 56(c).” Yazoo Prop. v. Katz & Besthoff, 644 So.2d 429, 431 (Miss.1994) (citing Lyle v. Mladinich, 584 So.2d 397, 398 (Miss.1991)).
¶23. “A trial court’s decision on attorneys’ fees is subject to the abuse of discretion standard of review.” Bank of Mississippi v. Southern Mem’l Park, Inc., 677 So.2d 186, 191 (citing Barber v. Barber, 234 Miss. 89, 105 So.2d 630 (1958)).
DISCUSSION OF THE ISSUES
I. DID THE COURT BELOW ERR BY ACCEPTING APPOINTMENT AS A SPECIAL CHANCELLOR AND BY FAILING TO GRANT A NEW TRIAL AND RECUSING HIMSELF?
¶ 24. After receiving the ruling of the chancellor, the appellants filed their *547 motion for a recusal. If the appellants had prevailed in the lower court, certainly there would have been no recusal sought. The primary thrust of this assignment of error is that Chancellor Montgomery, as a member of the Baptist church, could not impartially preside over this matter. In an effort to show his unfairness, the appellants state, “The special chancellor made special rules throughout the trial, which indicated that he could not be fair as between the parties to their litigation.” The reverse of this reasoning is that the special chancellor would have been fair had he ruled in the appellants’ favor. This Court suggests that in the future, if a party wishes to have a chancellor recused, the motion be made prior to the chancellor issuing an opinion. Also, the safer procedure is to determine if there is a possible reason for recusal prior to the case being heard. By proceeding in that fashion, a chancellor would be presented with the recusal motion prior to any rulings being made.
In this case, the motion for recusal was made after the appellants received an adverse ruling. “[0]ver the years, [this Court has] been quick to point out that we will not allow a party to take his chances with a judge about whom he knows of grounds for recusal and then, after he loses, file his motion.” Buchanan v. Buchanan, 587 So.2d 892, 897 (Miss.1991). “Where the party knew of the grounds for the motion or with the exercise of reasonable diligence may have discovered those grounds and where that party does not move timely prior to trial, the point will be deemed waived.” Tubwell v. Grant, 760 So.2d 687, 689 (Miss.2000) (citations omitted).
¶ 25. The appellants filed this case and therefore knew all of the defendants listed in the action, including the Mississippi Baptist Foundation. If the appellants had a problem with the religious affiliation of the special chancellor, their motion for re-cusal should have been filed at the beginning of the action rather than after receipt of an adverse ruling. The supreme court has consistently held that failing to object to a trial judge’s appearance in a case will result in a waiver. Tubwell, 760 So.2d. at 689. As a result of the appellants’ untimely objection, this assignment of error must fail.
II. DID THE TRIAL COURT ERR BY FAILING TO FIND THAT JOHN AND GERTRUDE WIL-BANKS EXECUTED MUTUAL WILLS AND REFUSING TO DIRECT THE PROBATE OF THE WILL OF GERTRUDE WIL-BANKS DATED MARCH 15, 1978?
¶ 26. There must be a specific contract or agreement to execute a mutual, irrevocable will. There must be credible evidence to establish such an agreement. Alvarez v. Coleman, 642 So.2d 361, 368 (Miss.1994) (citing Lipe v. Souther, 224 Miss. 473, 80 So.2d 471 (1955)). See also Monroe v. Holleman, 185 So.2d 443 (Miss.1966). These cases show the elements necessary for a mutual will and the factors required to establish its existence. In reviewing the record in the present case, we find no documented or credible evidence to establish a contract between Mr. and Mrs. Wilbanks to execute mutual irrevocable wills. There was testimony by Mr. and Mrs. William P. Simpson, Mrs. Simpson being the niece of the Mr. Wilbanks, and Jimmy Wilbanks, nephew of Mr. Wilbanks, that on one occasion Mr. and Mrs. Wil-banks stated that they wanted to leave the bulk of their estate to their nieces and nephews. Neither actually did so in their wills of March 15, 1978. This testimony was not sufficient to establish mutual wills.
*548 ¶ 27. There was no language in the wills nor in any related document to show that the parties intended to execute mutual wills. Mr. Gray, who performed accounting services over the years for the Wilbanks, and who was actively involved in the preparation of the March 15, 1978 wills, testified that he never heard any discussion on this subject from the Wil-bankses or from their attorney. Less than one month after Mr. Wilbanks’s death, the Wilbanks’s attorney, Sharp, a respected member of the bar, prepared a codicil to Mrs. Wilbanks’s will that she executed. By this codicil, Mrs. Wilbanks changed her residuary beneficiaries. Over the years after Mr. Wilbanks’s death, Mrs. Wilbanks executed several subsequent wills with differing provisions.
¶ 28. The decision of the chancellor that these were joint wills was supported by substantial evidence. This assignment of error is without merit.
III. DID THE TRIAL COURT ERR IN SUSTAINING THE MOTIONS FOR SUMMARY JUDGMENT?
¶ 29. Often, a written instrument lends itself to summary judgment in order to promote efficiency in the courts. Here, the terms of the will were clear and unambiguous. The question before the trial court was one of law, even though the parties disagreed.
¶ 30. A portion of the summary judgment ruling denied punitive damages against the estate of Gertrude R. Wilbanks and the Mississippi Baptist Foundation. As to the estate of Mrs. Wilbanks, Miss. Code Ann. § 91-7-235 (Rev.2000) does not allow the recovery of punitive damages against an estate because of a prior tort committed by the decedent. This statute has been upheld judicially. Kaplan v. Harco National Insurance Company, 716 So.2d 673, 679 (Miss.Ct.App.1998), Mervis v. Wolverton, 211 So.2d 847, 848 (Miss.1968). In addition, Mr. Wilbanks’s estate is not a party to this action. As to the Mississippi Baptist Foundation, there can be no punitive damages absent an award of actual damages. Snow Lake Shores Property Owners Corp. v. Smith, 610 So.2d 357, 362 (Miss.1992). Here, the chancellor made express findings of fact that the terms of the will were carried out in accordance with the intent of the testator. Therefore, the chancellor found that neither the estate of Gertrude R. Wilbanks nor the Mississippi Baptist Foundation were proper subjects for punitive damages.
¶ 31. The chancellor found that there were no genuine issues of material fact surrounding any of the appellants’ allegations against the Mississippi Baptist Foundation or the estate of Gertrude R. Wil-banks. None of the parties contest the fact that the will of John Thomas Wilbanks created two trusts, a marital trust (Trust B) and a charitable trust (Trust A). These trusts were to be funded by the residual estate of John Thomas Wilbanks: sixty percent to Trust A and forty percent to Trust B. The Mississippi Baptist Foundation was named trustee and conferred the powers under the Mississippi Uniform Trustees Powers Act. The will also provided that the widow, Gertrude Rogers Wil-banks, was to receive five percent of the initial fair-market value of Trust A and the net income from Trust B annually until her death. The will waived accounting by the executrix but required the Mississippi Baptist Foundation to provide an annual accounting to Gertrude Rogers Wilbanks. The will also provided that all estate taxes and costs of administration were to have been paid from and out of residual Trust B. There are twenty-three named beneficiaries to Trust B, thirteen of whom were *549 plaintiffs in this action and some of whom were named defendants.
¶ 32. After John Thomas Wilbanks’s death, his will was admitted to probate. His widow, Gertrude R. Wilbanks, served as executrix in accordance with the will and was assisted by Herman Gray, her accountant, and Sharp, the drafter of the will. The will is not contested. The residual estate was divided 60/40 and the estate taxes paid out of the funds allocated for Trust B. Upon closing of the estate of John Thomas Wilbanks, the executrix delivered the funds to Mississippi Baptist Foundation as follows: sixty percent of the residual trust to fund Trust A and forty percent of the original trust less estate taxes to fund Trust B. The estate of John Thomas Wilbanks, as has been previously stated, is not a party to this litigation.
¶33. The chancellor ruled that there was no genuine issue of fact on these issues and that the Mississippi Baptist Foundation, as well as the estate of Gertrude R. Wilbanks, was entitled to summary judgment as a matter of law and that the intent of the testator has been fulfilled. The appellants have failed to produce evidence of a triable issue of fact or any authority to show that the chancellor was incorrect in ruling that the intent of the testator had been fulfilled in accordance with the will. The ruling of the chancellor was correct, and we find no merit to this assignment of error.
IV.DID THE TRIAL COURT ERR IN FAILING TO INCLUDE RELEVANT FACTS AND SEPARATE CONCLUSIONS IN ITS RULING?
¶ 34. After reviewing the opinion of the chancellor and the findings of fact and conclusions of law, this Court finds that the chancellor did in fact make all the relevant findings of fact and conclusions of law which were necessary in this case. Therefore, this assignment of error is without merit.
V. DID THE TRIAL COURT ERR IN ITS RULING CONCERNING THE ESTATE OF JOHN THOMAS WILBANKS?
¶ 35. The estate of John Thomas Wilbanks is not a party to the present proceeding. Therefore, this Court and the lower court could make no ruling as to the estate of John Thomas Wilbanks. Neither the lower court nor this Court have any authority to make a ruling against an entity which is not included as a party. State for Use and Benefit of Moak v. Moore, 373 So.2d 1011, 1012 (Miss.1979). Therefore, this assignment of error is without merit.
VI. DID THE TRIAL COURT ERR IN SUSTAINING THE MOTIONS FOR PARTIAL SUMMARY JUDGMENT IN RELATION TO THE ESTATE OF GERTRUDE R. WILBANKS?
VII. DID THE TRIAL COURT ERR IN SUSTAINING THE MOTION FOR SUMMARY JUDGMENT OF THE MISSISSIPPI BAPTIST FOUNDATION, INC.?
¶ 36. John Thomas Wilbanks died on June 27, 1978. His will was admitted to probate on July 20, 1978 in Cause Number 20287 in the Chancery Court of Alcorn County, Mississippi. On August 14, 1991, Chancellor James E. Bost entered an order closing the estate of John Thomas Wilbanks and discharging Mrs. Wilbanks as executrix, without a final accounting, and without notice to Mississippi Baptist Foundation. The estate of John Thomas Wilbanks was closed and has not been reopened and has not been included as a party to this suit. Therefore, the lower court and this Court simply had no juris *550 diction over the estate of John Thomas Wilbanks. Moore, 373 So.2d at 1012. Therefore, these two assignments of error are without merit.
VIII. DID THE TRIAL COURT ERR BY SUSTAINING THE MOTION FOR SUMMARY JUDGMENT OF THE MISSISSIPPI BAPTIST FOUNDATION AS TO THE WITHHOLDING OF FUNDS?
¶ 37. The Mississippi Baptist Foundation has refused to disburse the money to the parties in litigation to whom it is due because an outcome to this litigation is still pending. The Mississippi Baptist Foundation is a trustee for both Trust A and Trust B and has an obligation to retain all funds until there is a judicial resolution of this matter. For the Mississippi Baptist Foundation to disburse any funds from Trust A and Trust B before there is a final judicial resolution would be foolhardy. The Mississippi Baptist Foundation has never denied that it is trustee and that it owes these funds to those two trusts and the beneficiaries. Therefore until there is a final judicial resolution of the dispute between the plaintiffs and the defendants as to the proper distribution of the assets of the estate of Gertrude R. Wilbanks there should be no distribution of these funds. This Court finds no merit to this assignment of error.
IX. DID THE TRIAL COURT ERR BY GRANTING ATTORNEY FEES AND EXPENSES TO THE MISSISSIPPI BAPTIST FOUNDATION?
¶ 38. Counsel for the appellant admits in his brief that he was hand delivered a copy of the petition for fees and expenses. Mississippi Rule of Civil Procedure 5(b) provides that “[s]ervice upon the attorney [representative party] or upon a party shall be made by delivering a copy to him.... ” M.R.C.P. 5(b). When the petition for approval to pay these expenses was served, counsel for the appellants made no objection. The court did not grant payment of attorney’s fees and expenses until July 12, 1999, nearly a month and one-half after the counsel for the appellants was personally served. The appellants state that there was no hearing on the motion. Parties are not entitled to oral argument on motions. As set forth in Uniform Chancery Court Rule 3.11, “the chancellor may dispense with argument in any action.” The Mississippi Supreme Court has construed Miss.Code Ann. § 91-9-107 (Rev.2000) to mandate that unless limited by the trust agreement, if a trustee’s decision to seek representation on legal matters is justified, reimbursement for such fees comports with a fair reading of the applicable statutes. Bank of Mississippi v. Southern Mem’l Park, Inc., 677 So.2d 186, 190 (Miss.1996). We find that this assignment of error to be without merit.
CONCLUSION
¶ 39. We find no error in the chancellor’s judgment. Accordingly, we affirm on all issues.
¶ 40. THE JUDGMENT OF THE AL-CORN COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, and CHANDLER, JJ., concur.
PAYNE and IRVING, JJ. not participating.