755 So.2d 1108 (1999)
In the Matter of the ESTATE OF Rocky Robert BREWER, Deceased.
Barbara Balsara, Administratrix of the Estate of Rocky Robert Brewer, Deceased, Appellant,
v.
Tanja Adams, Appellee.
No. 97-CA-01378-COA.
Court of Appeals of Mississippi.
May 4, 1999.
Rehearing Denied August 17, 1999.
Certiorari Denied October 28, 1999.
*1109 John M. Mooney, Jr., Jackson, Attorney for Appellant.
Ken R. Adcock, Mark D. Morrison, Jackson, Attorneys for Appellee.
BEFORE McMILLIN, C.J., IRVING, AND PAYNE, JJ.
McMILLIN, C.J., for the Court:
¶ 1. Barbara Balsara, administratrix of the estate of Rocky Robert Brewer, deceased, has appealed the chancellor's judgment ordering the distribution of the proceeds from a wrongful death claim commenced by her as representative of the statutory wrongful death beneficiaries. On appeal, Balsara raises four matters for consideration. We have elected to recast her issues into three areas of concern based on our analysis of the questions actually presented by her appeal. We will delay reciting our version of these critical issues until after we discuss the facts. We do so on the belief that the issues will, at that point, be more readily understandable. Suffice it to say at this point, for reasons we proceed to develop, we find it necessary to reverse and remand the chancellor's decision for further proceedings.

I.

Facts
¶ 2. On January 4, 1997, Rocky Robert Brewer was struck and killed by an automobile. Brewer was eighteen years old and unmarried at the time of his death. On March 7, 1997, Barbara Balsara, Brewer's mother, was appointed administratrix of her son's estate in a proceeding in the Chancery Court of Rankin County. Balsara's petition for appointment included a request that Brewer's heirs at law be determined *1110 in the proceeding. She also sought authority to commence a wrongful death action for the benefit of Brewer's wrongful death beneficiaries, the action to be brought against the driver of the vehicle that struck and killed Brewer. The petition, in addition to naming those living individuals who would appear to be Brewer's heirs at law, alleged that Tonya Kristine Adams (hereafter "Kristine Adams") was pregnant at the time of Brewer's death and that circumstances suggested that Brewer might be the father of her yet-unborn child.
¶ 3. The order appointing Balsara as administratrix authorized her to pursue the wrongful death claim and approved her request to retain attorney John M. Mooney to prosecute the claim under a contingency fee arrangement.
¶ 4. On April 30, 1997, Balsara's attorney sent notice to Kristine Adams by certified mail that Balsara had been appointed administratrix of Brewer's estate. The letter also informed Adams that a wrongful death action had been initiated. Adams was instructed in the letter to contact Balsara's attorney if she contended that Brewer was the father of her child. Whether it was coincidental or not, the child, named Rebecca Elizabeth Brewer, was born on April 30, the same date the notice was mailed. The record indicates that the letter was received on May 2, 1997. Adams did not respond to the letter by contacting either Balsara or Mooney or by taking any other action regarding the Rankin County proceedings.
¶ 5. Mooney arrived at a proposed settlement of the wrongful death claim with the attorney for the driver's insurance company. The settlement amount was $25,000, which represented the limits of the driver's liability insurance policy. Mooney requested a hearing before the Rankin County chancellor for the purpose of having the settlement approved. The motion did not include a request for authority to distribute the settlement proceeds to any particular beneficiary or beneficiaries. A hearing on the motion to approve the settlement was set for August 4, 1997.
¶ 6. Though Kristine Adams had not responded to Mooney's April 30 letter, it cannot be said that the child's family had been completely inactive. Tanja Adams, who was Kristine Adams's mother and, thus, the child's maternal grandmother, obtained the services of attorney Ken R. Adcock in January 1997, shortly after Brewer's death, to investigate the possibility of a wrongful death claim on behalf of the unborn child. The contract for services, dated January 14, 1997, recited that it was between Adcock and "a baby to be born on April 27, 1997, conceived between Tonya Kristine Adams, a minor, and Rocky Robert Brewer, deceased." No effort was made to obtain chancery court approval of the contract in January or any subsequent time until after the baby was born.
¶ 7. On July 14, 1997, almost two and one half months after the child was born and over two months after notice had been sent to her daughter concerning the Rankin County proceeding, Tanja Adams filed a petition in the Chancery Court of the First Judicial District of Hinds County asking that she be appointed guardian of the estate and person of her grandchild, Rebecca Elizabeth Brewer. The petition also sought court approval for her attorney, Ken Adcock, to pursue a wrongful death claim under the previously existing contingency fee contract. There is no indication that Tanja Adams informed the Hinds County chancellor of the pending Rankin County proceeding. On July 28, 1997, the Hinds County Chancery Court issued an order granting Tanja Adams all the relief she had requested. At approximately the same time, blood test results were obtained that indicated a greater than 99% probability that Rebecca Elizabeth Brewer was, in fact, the posthumous child of Rocky Brewer.
*1111 ¶ 8. On the hearing date in the Rankin County estate administration, Tanja Adams filed a motion to intervene in her capacity as guardian for the child. After hearing arguments, the chancellor allowed the intervention. He further found that the child was Rocky Brewer's illegitimate child and, thus, was his sole wrongful death beneficiary under the statute. He, therefore, held that she was entitled to receive the entire settlement proceeds. The chancellor also found that attorney's fees were, as a matter of law, merely an assignment of a portion of the right of recovery belonging solely to Rebecca Elizabeth Brewer, and, therefore, Adcock was the only attorney entitled to recover a fee from the wrongful death settlement. The chancellor ordered disbursement of the $25,000 settlement to Tanja Adams as guardian for Rebecca and ordered that Adcock be paid the attorney's fees specified in his contract.
¶ 9. Balsara perfected this appeal, which presents the following issues (as recast by the Court):
(1) Whether the trial court erred in finding Rebecca Elizabeth Brewer to be an heir at law of Rocky Brewer, and thus a wrongful death beneficiary, without complying with the legal formalities necessary to adjudicate paternity of an illegitimate child.
(2) Whether, in all events, Rebecca Elizabeth Brewer's claim to be a wrongful death beneficiary of Rocky Brewer was time barred because of her failure to institute an action to adjudicate paternity within the time allowed by statute.
(3) Whether the chancellor erred in awarding Adcock the full amount of his contractual attorney's fee with no compensation to Mooney despite Mooney's having filed the wrongful death action and negotiated the settlement of the claim.

II.

The Standard of Review
¶ 10. A chancellor's ruling on findings of fact will not be disturbed unless manifestly wrong or clearly erroneous. Denson v. George, 642 So.2d 909, 913 (Miss.1994). For questions of law, our standard of review is de novo. Smith v. Dorsey, 599 So.2d 529, 533 (Miss.1992). Three principal questions are presented in this appeal. We conclude that the errors urged by Balsara all involve questions of law in which the chancellor enjoyed no discretion. We also conclude that the chancellor erred as a matter of law as to the first and third issues stated above, which requires this Court to reverse and remand in part and reverse and render in part.

III.

The Lack of a Proceeding to Establish Paternity
¶ 11. Balsara claims that the chancellor erred in adjudicating paternity without complying with the proper formalities. The sole evidence of paternity before the chancellor was a written report of the results of scientific paternity testing apparently conducted by a laboratory, but which had not been authorized in advance by court order. The report was a part of the record only because it was attached as an exhibit to Tanja Adams's petition to intervene.
¶ 12. A person claiming to be the illegitimate child of a deceased male when paternity was not legally established prior to the alleged father's death must obtain "an adjudication of paternity after the death of the intestate, based upon clear and convincing evidence, in an heirship proceeding under sections 91-1-27 and 91-1-29." Miss.Code Ann. § 91-1-15(3)(c) (Rev. 1994). Section 91-1-27 requires the claimant to file a petition asking to "be recognized and decreed to be the heir at law of said deceased." Miss.Code Ann. § 91-1-27 (Rev.1994). Section 91-1-29 requires, as a part of the proceeding to establish heirship, that "[a]ll the heirs at law and next of kin of said deceased who are not made parties plaintiff to the action shall be *1112 cited to appear and answer the same." Miss.Code Ann. § 91-1-29 (Rev.1994). Additionally, that section requires that notice be published for unknown heirs of the decedent. Miss.Code Ann. § 91-1-29 (Rev.1994).
¶ 13. When the individual asserting heirship claims to be an illegitimate child, we conclude that the necessary parties to such a proceeding described in Section 91-1-29 include those blood relations of the decedent that would be the decedent's heirs at law should the illegitimate's claim of paternity fail. These persons would be necessary parties even if they would be completely excluded from inheritance if the paternity claim were proven.
¶ 14. Therefore, before the chancellor could adjudicate this child to be the illegitimate child of Rocky Brewer, it was necessary to do two things. First, all those who would be heirs at law, but for the illegitimate's claim of paternity, would have to be made parties to the proceeding. Secondly, the notice for other unknown heirs would have to be published as provided by the statute. Miss.Code Ann. § 91-1-29 (Rev. 1994). In this case, neither of these prerequisites to a proper adjudication of paternity occurred. In In re Estate of Richardson, the supreme court said that, when there was "no record that a formal hearing was ever held or that any interested party gave testimony or offered proof of paternity," the chancellor's purported determination of heirship could not be sustained. In re Estate of Richardson, 695 So.2d 587, 589 (Miss.1997). We find the failure to have all necessary parties before the court, the failure to publish for unknown potential heirs, and the failure to then conduct a formal adversarial proceeding on the question of paternity, are, in combination, fatal to the legal validity of the chancellor's adjudication of paternity.

IV.

Was Rebecca Elizabeth Brewer's claim time-barred?
¶ 15. Balsara argues that, by the time Tanja Adams intervened in the Rankin County proceeding and sought to obtain an adjudication of heirship, it was simply too late even had there been an attempt to conduct a formal paternity inquiry. She relies upon certain statutory pronouncements that, on their face, appear to support her argument. In order to follow Balsara's reasoning, it becomes necessary to navigate a course through several separate, though related, statutory pronouncements.
¶ 16. At its heart, this case turns on whether Rebecca Elizabeth Brewer is a wrongful death beneficiary of Rocky Brewer. Since a wrongful death claim is purely a creature of statute that was unknown at the common law, we must begin our journey with the statute creating such a cause of action. Section 11-7-13 of the Mississippi Code, establishing a cause of action for wrongful death, when the decedent is an unmarried individual, states that the damages "shall be equally distributed to the children [of the deceased]...." Miss. Code Ann. § 11-7-13 (Supp.1998). The statute goes on to provide other alternative beneficiaries if the decedent has no children.
¶ 17. The statute specifically declares that "the provisions of this section shall apply to illegitimate children on account of the death of the natural father ... if the survivor has or establishes the right to inherit from the deceased under Section 91-1-15." Miss.Code Ann. § 11-7-13 (Supp.1998)(emphasis added).
¶ 18. Therefore, we must next look at Section 91-1-15 for the purpose of determining whether Rebecca Brewer had complied with its provisions at the time the chancellor ordered the wrongful death benefits paid for her sole benefit. It is at this point that considerations of the timeliness of efforts on the child's behalf first arise. For purposes of our discussion, Section 91-1-15 provides, that an illegitimate can only inherit from the natural *1113 father "if ... [t]here has been an adjudication of paternity after the death of the intestate, based upon clear and convincing evidence, in an heirship proceeding under sections 91-1-27 and 91-1-29." Miss.Code Ann. § 91-1-15(3)(c)(Rev.1994). We determined in section III of this opinion that the adjudication had not been properly made at the time of Tanja Adams's intervention in the Rankin County proceeding. In fact, a proper adjudication has not been made as of yet, insofar as this record indicates. Balsara seizes on the next succeeding passage of the section to argue that it is now too late for Rebecca to obtain such an adjudication. In pertinent part, it says:
However, no such claim of inheritance shall be recognized unless the action seeking an adjudication of paternity is filed within one (1) year after the death of the intestate or within ninety (90) days after the first publication of notice to creditors to present their claims, whichever is less....
Miss.Code Ann. § 91-1-15(3)(c) (Rev.1994)(emphasis added).
¶ 19. Balsara points out that the first publication of the notice to creditors was made on April 9, 1997 and that more than ninety days had transpired before Tanja Adams sought to intervene in the case to establish the right of her ward, Rebecca Brewer, to be recognized as Brewer's only wrongful death beneficiary.
¶ 20. Though the first notice to creditors was published on April 9, Rebecca was not born until April 30. Assuming without deciding (since it is unnecessary for purposes of our deliberations) that the ninety-day period to file an action to determine paternity would run from the date of the child's birth rather than the date of the first publication when the publication date precedes the child's birth date, we are still faced with the situation that Tanja Adams did not file her petition to intervene in the Rankin County case until August 4, which was more than ninety days after both of these potentially critical dates.
¶ 21. Nevertheless, we conclude that Rebecca's claim is saved from this statutory time bar by the Mississippi Supreme Court's decision in Leflore by Primer v. Coleman, 521 So.2d 863 (Miss.1988). In that case, the administratrix of Primer's estate had formally suggested to the court that Primer may have been the father of two illegitimate children but that "they were never adjudicated his legal children through adoption, paternity action or any other legal means as recognized by Mississippi law." Id. at 864. The administratrix proceeded to publish for creditors but did nothing to seek a formal determination of Primer's rightful heirs. More than ninety days after the first publication, the natural mother of these two purported illegitimate children filed a proceeding to have her children recognized as numbering among Primer's heirs at law. Id. at 865. The chancellor imposed the statutory time bar in Section 91-1-15(3)(c), but, on appeal, the Mississippi Supreme Court reversed. The supreme court said that the administratrix, because of her knowledge of these children's status as potential heirs, "should have complied with Miss.Code Ann. § 91-1-29 and had process issued upon [them]." Id. at 869. The court further said that "[s]ince the administratrix knew of these illegitimate children, she should have given them notice of the issuance of letters of administration." Id. It, therefore, refused to bar the children's right to seek to share in their putative father's estate.
¶ 22. We conclude that the decision in Leflore by Primer v. Coleman prevents the application of the ninety-day time bar in this case. We think that Balsara had sufficient actual knowledge of the potential right of heirship in this child to have required her, within a reasonable time after the child's birth, to comply with the formalities of Section 91-1-27 and 91-1-29. This would have required that the child be made a party to the administration proceeding. In anticipation of the argument that the certified letter to the child's mother complied with the abovequoted *1114 requirement of Leflore by Primer v. Coleman that the child be given "notice of the issuance of letters of administration," we hold that the word "notice" was meant to refer to the formal citation to appear and answer that is described in Section 91-1-29, i.e., a summons served in accordance with the applicable rules of civil procedure. When a formal summons is required, a mailed letter is not a suitable substitute. Balsara's failure to formally summons the child after her birth in late April 1997, at a time when Balsara had actual knowledge of the child's potential claim, prevents Balsara from raising the ninety day time bar set out in Section 91-1-15(3)(c).

V.

Did the chancellor err in awarding attorney's fees to Adcock?
¶ 23. There is no room for dispute that, at the time Balsara qualified as administratrix of her deceased son's estate, she was a proper party to commence a wrongful death suit. The statute specifically provides that "[t]he action ... may be brought in the name of the personal representative of the deceased person for the benefit of all persons entitled under the law to recover...." Miss.Code Ann. § 11-7-13 (Supp.1998). The wrongful death statute recites a list of those persons who may act as the named plaintiff in such an action but it does not purport to give preference to one potential plaintiff over another. The only limitation in the statute is that, no matter which of the multiple persons authorized to bring the suit actually does so, "there shall be but one (1) suit for the same death which shall ensue for the benefit of all parties concerned...." Miss.Code Ann. § 11-7-13 (Supp.1998).
¶ 24. There can be no contention that Balsara acted precipitously in pursuing the wrongful death claim before there could be a final determination as to exactly who the beneficiaries of the claim would be. In fact, it would appear that, in her capacity as administratrix, Balsara could have been subjected to claims of dereliction of her duty had she taken no action on the wrongful death claim until after the birth of Rebecca Brewer. During the period between Rocky Brewer's death and the child's birth, there was no method to determine the true beneficiaries since the unborn child's potential claim was dependent on the occurrence of two uncertain future events; namely, (a) that she be born alive and (b) that she prove by clear and convincing evidence that Rocky Brewer was her natural father. See In re Estate of Davis, 706 So.2d 244, 247 (Miss. 1998).
¶ 25. During this period of unavoidable uncertainty, it was, nevertheless, helpful that the wrongful death claim be diligently pursued. Otherwise, there was the everpresent risk that substantial prejudice could be done to the claim through delay. Witnesses could be lost or their memories fade to the extent that their evidence would be less trustworthy. Potential defendants could die, disappear, or become insolvent. Ungathered physical evidence could be destroyed or lost.
¶ 26. With those considerations in mind, it is impossible to offer any criticism of Balsara or her attorney for their decision to pursue the wrongful death claim, even though, at the time, it was impossible to know who would ultimately reap the benefit of those efforts. Balsara and her attorney could possibly be accused of some lack of diligence for their decision to inform Rebecca's mother of the pending proceeding by certified mail rather than by formally bringing the child in as a party to the Rankin County proceeding, but we do not find that minor misstep to be an indication that they were embarked on a scheme to deprive Rebecca of her rights as the possible illegitimate child of Rocky Brewer.
¶ 27. There is nothing in the record of this case to indicate that attorney Mooney, once duly authorized by the chancellor to pursue this wrongful death claim, was anything *1115 but diligent in his efforts. The record reflects that Mooney filed the suit, negotiated the terms of the settlement, prepared all the pleadings to have the proposed settlement approved, and obtained a hearing date to have the petition considered. In short, Mooney did everything necessary, acting in good faith and with due diligence, to obtain the settlement proceeds for the benefit of the wrongful death beneficiaries, no matter who those beneficiaries might be.
¶ 28. Balanced against those considerations are the activities of Tanja Adams and her attorney. There can be little doubt that Rebecca Brewer's mother received actual notice within just a few days of the child's birth that the Rankin County proceedings were underway. We conclude that it is not unreasonable to also ascribe that actual notice to Tanja Adams and her attorney. Yet, fully aware that a duly-authorized wrongful death action had been commenced in another county, Adams appeared in Hinds County Chancery Court and obtained authority from the chancellor to institute a wrongful death action without informing the court that another proceeding was already pending. Adams appears to have sought permission to institute the claim in the face of the clear language of Section 11-7-13 directing that "there shall be but one (1) suit for the same death...." Miss. Code Ann. § 11-7-13 (Supp.1998). Although Adcock never actually filed a separate wrongful death action, it is also true that, insofar as appears in this record, he did not provide any service that was useful in obtaining the proposed settlement of the claim in the amount of $25,000. Whatever services Adcock provided to Rebecca Brewer, they were aimed toward establishing her right to participate in the wrongful death claim as the illegitimate child of the decedentcertainly a valuable service to his client, but a different service from those necessary to actually obtain a settlement of the wrongful death claim itself.
¶ 29. On these facts, we conclude that the chancellor was manifestly in error in denying attorney Mooney's right to payment under a contract that the chancellor himself had sanctioned and one that Mooney had, by all appearances, performed successfully. Insofar as Mooney's services are concerned, their value is the same whether Rebecca Elizabeth Brewer ultimately establishes herself as Rocky Brewer's child by clear and convincing evidence or whether, on her failure to do so, the settlement is distributed to those alternate beneficiaries that would exist if Brewer died childless. For that reason, it simply makes no sense to deprive attorney Mooney of any compensation and instead award the full contractual fee to another attorney who did nothing of value in the pursuit of the claim. That part of the chancellor's judgment must be reversed. Because we find Mooney's right of compensation is so clear as a matter of law, we reverse and render on this issue.

VI.

Conclusion
¶ 30. We reverse and remand the chancellor's determination that Rebecca Brewer was the sole wrongful death beneficiary of Rocky Brewer, deceased. We do so because, as of yet, there has been no formal adversarial proceeding in which all necessary parties were before the court to properly adjudicate the question of the child's paternity. We decline to find Rebecca Brewer's potential claim to be timebarred even though she failed to commence a paternity action within the ninety days set out in Section 91-1-15(3)(c) because Balsara, armed with actual knowledge of this child's potential claim, failed to make the child a party to the estate administration proceeding. As to attorney's fees, we reverse and render the chancellor's judgment and direct that attorney Mooney's court-sanctioned and fully-performed contract be honored.
¶ 31. Because we conclude that the necessity for this appeal was created by actions *1116 attributable to both the appellant and the appellee, we determine that the costs of the appeal ought to be equally divided between them.
¶ 32. THE JUDGMENT OF THE RANKIN COUNTY CHANCERY COURT ADJUDICATING REBECCA ELIZABETH BREWER TO BE THE SOLE WRONGFUL DEATH BENEFICIARY OF ROCKY ROBERT BREWER, DECEASED, IS REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. THE MATTER OF THE ENTITLEMENT OF THE ATTORNEY FOR THE APPELLANT TO PAYMENT FOR SERVICES PERFORMED IN PURSUIT OF THE WRONGFUL DEATH CLAIM IS REVERSED AND JUDGMENT IS RENDERED DIRECTING THAT THE APPELLANT'S ATTONEY'S CONTRACT BE HONORED ACCORDING TO ITS TERMS. COSTS OF THIS APPEAL ARE ASSESSED ONE-HALF TO THE APPELLANT AND ONE-HALF TO THE APPELLEE.
KING AND SOUTHWICK, P.JJ., COLEMAN, DIAZ, IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR.
BRIDGES, J., NOT PARTICIPATING.