# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-CA-01218-SCT

*HEATHER NICOLE FRANKLIN, FRED M.*
*HARRELL, JR. AND PAUL SNOW*
*v.*

*JONATHAN PAUL FRANKLIN, A MINOR, BY*
*AND THROUGH HIS NATURAL MOTHER,*
*CATHY PHILLIPS, AND BILL WALLER, SR.*

| | |
|---|---|
| DATE OF JUDGMENT: | 6/5/2001 |
| TRIAL JUDGE: | HON. JOE N. PIGOTT |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | FRANK W. TRAPP |
| | FRED M. HARRELL, JR. |
| | PAUL SNOW |
| ATTORNEY FOR APPELLEES: | BILL WALLER, SR. |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | REVERSED AND RENDERED - 02/13/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, P.J., COBB AND DIAZ, JJ.**

**DIAZ, JUSTICE, FOR THE COURT:**

¶1.     On the Court's own motion, the original opinion is withdrawn, and this opinion is

substituted therefor.

¶2.     At issue in this case is how attorneys' fees in a wrongful death suit should be

distributed.  Jonathan Paul Franklin (Jonathan) brought suit on July 13, 1999, for the

wrongful death of his father.  He was represented by attorney Bill Waller, Sr. (Waller). On

July 20, 1999, Jonathan's sister, Heather Nicole Franklin (Heather), also brought suit for the same wrongful death. She was represented by attorneys Fred M. Harrell, Jr. (Harrell) and Paul Snow (Snow). Circuit Court Judge John T. Kitchens ordered the cases consolidated. His order provided that in the event of recovery, the proceeds would be distributed equally among the heirs, and their attorneys would be compensated according to their existing contracts with their respective clients. Pursuant to the order, the attorneys worked together preparing for trial for over a year and a half, with Snow and Harrell doing most of the work. The case settled on the day before trial. Thereafter, Waller sought all the attorney fees, claiming entitlement based upon the fact that he filed the first wrongful death lawsuit. Judge Kitchens recused himself, and Judge Joe N. Pigott was appointed. Judge Pigott vacated Judge Kitchens's order and awarded all attorney fees in the Franklin case to Waller.

¶3. Snow and Harrell's Motion for New Trial was denied July 23, 2001. Aggrieved by the lower court's ruling, Snow and Harrell appeal, presenting the Court with the following issues:

> **I. WHETHER THE SUCCESSOR JUDGE ERRED IN REFUSING TO AWARD ATTORNEY FEES TO SNOW AND HARRELL WHERE THEY WERE THE ONLY ATTORNEYS WHOSE CONTRACT WAS APPROVED PRIOR TO THE INSTITUTION OF SUIT AND WHERE THEY DID A MAJORITY OF THE WORK ON THE WRONGFUL DEATH SUIT.**
>
> **II. WHETHER THERE WAS AN IMPLIED CONTRACT BETWEEN WALLER AND SNOW AND HARRELL FOR THE PAYMENT OF ATTORNEY FEES.**
>
> **III. WHETHER JUDGE PIGOTT ERRED IN VACATING THE NOVEMBER 1999 ORDER OF JUDGE KITCHENS AFTER SNOW**

2

**AND HARRELL RELIED ON IT IN PREPARING THE CASE FOR TRIAL.**
**IV. WHETHER THE FACT THAT WALLER HAD NO CONTRACT WITH HEATHER FRANKLIN MEANS HE IS NOT ENTITLED TO ATTORNEY FEES FROM HER.**

## FACTS

¶4.    On July 9, 1999, Johnny Ray Franklin (Franklin) was killed in an automobile accident. Franklin had two heirs, a minor son named Jonathan, and an adult daughter named Heather. Jonathan, through his mother Cathy Phillips, filed a wrongful death suit on July 13, 1999. The suit was filed solely on Jonathan's behalf and did not purport to represent the interests of any other heirs. At the time, Jonathan was represented by William Wright (Wright). Shortly after the lawsuit was filed, however, Wright was replaced as counsel by Waller. Neither Wright nor Waller had their contingency fee contracts approved by the chancery court before filing suit. Neither obtained the approval of the chancery court to file a wrongful death suit on behalf of the estate; nor did they timely open a guardianship for Jonathan.

¶5.    Also killed in the crash was a passenger, Timothy Hawkins (Hawkins). His heirs included both parents and four siblings, all of whom were represented by Snow and Harrell. On March 16, 2000, the trial judge, Honorable John T. Kitchens, ordered that suit filed on behalf of Hawkins's heirs be consolidated with the suit for Franklin's heirs. The Hawkins case went to trial in August, 2000, and, after the jury awarded $470,000 in compensatory damages, the Hawkins case settled for $700,000 during the punitive damages phase of the trial.

3

¶6.   On July 20, 1999, Heather opened an estate in the chancery court and was named administratrix. The chancery court approved a contingency fee contract with Harrell to represent Heather individually and as administratrix of the estate. Harrell later associated Snow. The chancery court also approved the filing of a wrongful death lawsuit for all the heirs, which was filed that same day.

¶7.   On November 22, 1999, Judge Kitchens ordered that Heather join in the lawsuit filed by Jonathan. In his order, Judge Kitchens stated that the attorneys for each heir should prosecute the case together and, in the event of a recovery, attorney fees would be determined according to the contract signed between each heir and his/her respective counsel. Waller's Motion to Reconsider was denied. In reliance on the November 1999 order, Snow and Harrell worked diligently to prepare the case for trial, doing far more work on the case than Waller. On August 7, 2000, the day trial was to begin, the case settled for $1,750,000. Each heir received one-half of the settlement.

¶8.   After settlement, Waller sought to have the circuit court award him all the attorney fees. Waller argued that he should receive 100% of the Franklin attorney fees because he filed the first wrongful death suit, and under the wrongful death statute there can only be one lawsuit. He contended that any other lawsuits are therefore immaterial to the case first filed and that the first lawsuit is to recover on behalf of all of the heirs. Snow and Harrell were of the opinion that they should receive 100% of the attorney fees in the Hawkins case because they represented all of the heirs and 50% of the fees in the Franklin case because they represented one of the two children.

4

¶9.	On December 2, 2000, Waller filed a motion requesting Judge Kitchens to again reconsider his November 1999 order regarding attorney fee splitting. The motion was denied, and final judgment was entered on April 23, 2001. In the final judgment, however, Judge Kitchens retained jurisdiction "to the extent required to resolve the pending issues relating to the apportionment of attorney fees and expenses among the various counsel for plaintiffs."

¶10.	On December 13, 2000, Waller filed a motion to recuse Judge Kitchens. Waller contended that the November 1999 order indicated that Judge Kitchens was biased in favor of Snow and Harrell. Following a hearing on January 25, 2001, Judge Kitchens, while denying any reason to doubt his impartiality, voluntarily recused himself.[1] Thereafter, Special Judge Joe Pigott was appointed.

¶11.	On June 5, 2001, Judge Pigott vacated the November 1999 order. Judge Pigott held that while Heather had a right to join in the lawsuit filed by Jonathan, the control of the suit was in the hands of Jonathan and his attorneys since his suit was filed first. Since all heirs-at-law interests were represented in this one lawsuit, only one attorney's fee was payable out of the recovery. Judge Pigott also ruled, "[t]he Circuit Court had no authority to order

---

[1]Snow and Harrell argue that Judge Kitchens should not have recused himself. They argue that the fact that Waller did not request Judge Kitchens to recuse himself until after he had presided over the case for a year and a half illustrates that Waller waived any right to have Judge Kitchens recused. *See* **Buchanan v. Buchanan**, 587 So. 2d 892, 897 (Miss. 1991) (the court "will not allow a party to take his chances with a judge about whom he knows of grounds for recusal and then, after he loses, file his motion"); **Wilbanks v. Gray**, 795 So. 2d 541, 547 (Miss. Ct. App. 2001) ("If the appellants had a problem with the religious affiliation of the special chancellor, their motion for recusal should have been filed at the beginning of the action rather than after receipt of an adverse ruling.").

attorneys Snow and Harrell into the Franklin case and no authority to adjudicate the division of attorney's fees prospectively before recovery. Circuit Courts should not interject attorneys into another attorney's cases and require a division of fees." Judge Pigott awarded all attorney fees from the Franklin settlement in the amount of $859,326.50 to Waller; including $430,000 in attorney fees provided for in Heather's contract with Snow and Harrell.[2] Waller was allowed $10,500 as reimbursement for expenses. Snow and Harrell were allowed $20,847 for expenses. They allege total expenses of $41,694.[3]

¶12. Harrell and Snow's Motion for New Trial was denied July 23, 2001. They filed their Notice of Appeal on August 22, 2001.

## DISCUSSION

¶13. The standard of review regarding attorney fees is the abuse of discretion standard. ***Mauck v. Columbus Hotel Co.,*** 741 So.2d 259, 269 (Miss. 1999). However, whether wrongful death beneficiaries should be allowed to retain and pay their own counsel out of their portion of any recovery is a question of law, as it necessarily involves interpretation of the wrongful death statute. For questions of law, our standard of review is de novo. ***Smith v. Dorsey***, 599 So. 2d 529, 533 (Miss. 1992). Thus, we sit in the same position as did the trial court.

> I. WHETHER JUDGE PIGOTT ERRED IN REFUSING TO AWARD ATTORNEY FEES TO SNOW AND HARRELL WHERE

---

[2]$45,000 of this went to Wright, who represented Jonathan for 45 days before giving the case to Waller.

[3]Snow and Harrell were reimbursed their remaining expenses of $20,847 in the Hawkins case.

**THEY WERE THE ONLY ATTORNEYS WHOSE CONTRACT WAS APPROVED PRIOR TO THE INSTITUTION OF SUIT AND WHERE THEY DID A MAJORITY OF THE WORK ON THE WRONGFUL DEATH SUIT.**

¶14. Mississippi's wrongful death statute, Miss Code Ann. § 11-7-13 (Supp. 2002), created a cause of action unknown to the common law. The wrongful death action is not part of the estate of the deceased. *Partyka v. Yazoo Dev. Corp.*, 376 So. 2d 646, 650 (Miss. 1979) (citing *Byars v. Austin,* 218 So. 2d 11, 15 (Miss. 1969)). Only those individuals listed in the wrongful death statute may bring this independent cause of action. *Partyka*, 376 So.2d at 650 (citing *Hasson Grocery Co. v. Cook*, 196 Miss. 452, 459, 17 So.2d 791 (1944)). On appellate review, we strictly construe Mississippi's wrongful death statute. *Smith v. Garrett*, 287 So. 2d 258, 260 (Miss. 1973) (collecting authorities).

¶15. The wrongful death statute recites a list of those persons who may act as the named plaintiff in an action but it does not give preference to one potential plaintiff over another. The only limitation in the statute is that, no matter which of the multiple persons authorized to bring the suit actually does so, "there *shall* be but one (1) suit for the same death which *shall* ensue for the benefit of all parties concerned . . . ." Miss. Code. Ann. § 11-7-13 (Supp. 2002) (italics added). A basic tenet of statutory construction is that "shall" is mandatory and "may" is discretionary. *Planters Bank & Trust Co. v. Sklar*, 555 So.2d 1024, 1027 (Miss. 1990); *Murphy v. State*, 253 Miss. 644, 649, 178 So. 2d 692 (1965). Thus, in most wrongful death cases, the first wrongful death lawsuit filed represents the interests of all the wrongful death heirs, to the exclusion of any subsequently filed lawsuits. Because there may be but one lawsuit filed in any wrongful death case, this "first-to-file" rule gives preference

7

to the first case filed. However, it does not prohibit the court from ordering multiple wrongful death suits to be joined. *Mobile, Jackson & Kansas City R.R. v. Hicks*, 91 Miss. 273, 46 So. 360, 397 (1908). Indeed, the statute explicitly allows all interested parties to join in the suit. Miss. Code Ann. § 11-7-13. *See also* M.R.C.P. 20. Because the two Franklin heirs each brought a wrongful death lawsuit for the same death, they obviously ran afoul of the statute. Thus, Judge Kitchens's November 1999 order combining Heather and Jonathan's wrongful death cases was proper. The question remains whether his apportionment of attorney fees between the parties according to their pre-existing contracts and allowing Snow and Harrell to participate in the joined lawsuit was also proper or, as Judge Pigott held, in error.

¶16. Judge Pigott's award on June 5, 2001, of all the attorney fees to Waller came a year and a half after Judge Kitchens's order allowing Snow and Harrell to participate in the lawsuit. Judge Pigott held that, though Heather had a right to participate in the wrongful death action, control of the suit was in the hands of Jonathan and his attorneys since his suit was filed first. Snow and Harrell argue this was error. They offer proof of the substantial amount of time and work expended by them in preparing the Franklin case for trial and contrast it to the de minumus amount they claim was expended by Waller. They claim that under Mississippi law, an attorney whose efforts contribute to obtaining a settlement or in enhancing a settlement is entitled to attorney fees. They also argue that Waller's claim of entitlement based on filing first is not determinative and ask the Court to give priority to their contract because it was approved by the chancery court.

8

¶17. The Court of Appeals has held that a chancellor erred in awarding all attorney fees to an attorney who represented an illegitimate child found to be the decedent's sole wrongful death beneficiary and thereby denying fees to an attorney who filed the wrongful death suit, acting in good faith and with due diligence, when the former attorney did nothing to obtain settlement, but only represented the illegitimate child's interest. *In re Estate of Brewer*, 755 So. 2d 1108 (Miss. Ct. App. 1999). "[I]t makes no sense to deprive the attorney . . . of any compensation and instead award the full contractual fee to another attorney who did nothing in pursuit of the claim . . . Because we find [the attorney's] right of compensation is so clear as a matter of law, we reverse and render on the issue." *Id.* at 1115. The court directed that the attorney's "court sanctioned and fully performed contract be honored." *Id.* Snow and Harrell rely heavily on *Brewer* to support their position that an attorney who contributes to an award should himself be awarded. Waller argues that the *Brewer* case is distinguishable from the case sub judice in that only one wrongful death lawsuit was filed therein and the attorney ultimately awarded compensation was also the attorney who initially filed the lawsuit. However, *Brewer* nonetheless stands for the proposition that an attorney who substantially contributes to a wrongful death settlement should be compensated for his time and effort.

¶18. There is no question that Snow and Harrell performed under their contract and their work benefitted both their clients (Heather and the estate) and Waller's client (Jonathan) by enhancing the settlement value of the lawsuit. Snow's office investigated the accident by obtaining photographs and interviewing witnesses. He sent out a 60 page settlement

9

package. He researched the types of experts needed and ultimately hired an accident reconstruction expert and an expert on hedonic damages. Waller did not attend all of the depositions, including that of the accident reconstruction expert. In the depositions he did attend, Snow asked 91% of the questions and Waller asked only 9%. Snow propounded written discovery, answered discovery and filed numerous motions to compel. He also filed five briefs, including responses to two summary judgment motions. The only written discovery filed by Waller was propounded to a defendant who was later dropped from the lawsuit.[4] Snow prepared and filed 89% of the plaintiffs' pleadings while Waller's office filed 11%. Snow and Harrell conducted a mock trial and made a videotape on the issue of liability for use at trial. Snow had expenses of $41,694;[5] Waller's expenses were $10,500.

¶19. Waller does not deny that Snow and Harrell did most of the work. Rather, he argues that the amount of work done by Snow and Harrell was unnecessary because it was a "slam dunk" case. Waller argues that

> there was no benefit, direct or indirect, received from the activities of Snow and Harrell since liability was admitted and the other matters dealt primarily with attempting to elevate the case from actual damages to punitive damages. The Franklin case was settled based on actual damages claimed and the rather outrageous activities of Snow and Harrell in attempting to establish punitive damages were of no benefit to the Franklin settlement whatsoever.

---

[4]Defense counsel Toney testified that "much more" of the paperwork was generated by Snow's office. "[A]ll the paperwork that came in the mail, it - it came from your - your [Snow's] place." Other than motions opposing the daughter's joinder in the case, Waller filed interrogatories and request for production to Jerry Hobbs, who was later dropped from the lawsuit. He answered interrogatories and requests for production for the son. He designated experts, but failed to provide expert reports.

[5]Half of which were reimbursed from the Hawkins' settlement.

¶20.   Conversely, Snow and Harrell argue that the defendants did not admit liability until the day  before trial.  Until that time, they insist, liability was vigorously contested.  They point to the testimony of defense counsel John Toney, where he admits that until the day before trial in the Hawkins's case, liability was vigorously contested.  Since the issue of liability was the same in Franklin as it was in Hawkins, Snow and Harrell argue this statement demonstrates the defense's denial of liability in Franklin.  They further claim that it was only their vigorous preparation that compelled this last second concession.

¶21.   Snow and Harrell also argue that the case was not as open and shut as Waller alleges and that a punitive damage award was not outrageous as Waller claimed, but a very real possibility.  Their investigation and discovery had revealed that punitive damages might be available based upon the defendant's gross negligence.  Both drivers of the tractor trailers that caused the accident which killed Franklin and Hawkins had applied for protective orders and refused to answer discovery, presumably because of their potential personal liability.  Snow and Harrell filed motions to compel and responded to the motions for a protective order, and were able to force the drivers to be deposed and to answer discovery.  Waller participated in none of this.  Moreover, only Snow responded to and prevailed against defendant's motion for summary judgment with regard to punitive damages.

¶22.   Witness Lance Stevens testified that if all of Snow's time had been spent on liability issues, the case would have indeed been overworked.  However, he explained that liability was not the only issue.  He testified that there was going to be a very serious dispute as to who among the defendants had what percentage of liability and where the punitive damages

11

would lie. Stevens further testified that the fair market value of the cases would have been much less had the possibility of a punitive damage award not existed, and that Snow's expenses in the case were not unreasonable. Interestingly, after the judge in the Hawkins case ordered that the jury could consider punitive damages, that case settled for $250,000 more than the compensatory award. Since the evidence of liability was the same in both cases, the trial court's decision in Hawkins regarding punitive damages illustrates that the effort by Snow in establishing the gross negligence of the defendants was not a waste of time. This possibility of a large punitive damages award was no doubt a factor in settlement, and, combined with the large amount of other work contributed by Snow and Harrell, demonstrates that the contributions of Snow and Harrell conferred a benefit upon all the heirs in the case. As *Brewer* makes clear, an attorney whose efforts contribute to obtaining a settlement or in enhancing a settlement is entitled to attorney fees.

¶23.    Waller points out that the Hawkins and Franklin cases were consolidated for the purpose of discovery and events leading up to the trial. He contends there is no way for Snow and Harrell to separate their trial preparation for Hawkins from that of Franklin or vise versa. Moreover, he argues, the evidence fails to address the question of whether that work was also necessary and required to prosecute and engage in a lengthy jury trial in the Hawkins case. Pursuant to Judge Pigott's order, Snow and Harrell received 100% of the attorney fees in the Hawkins case, thus, Waller argues, they have been fully compensated for their time and effort.

12

¶24. This argument is not well taken since Waller is requesting 100% of the fees from a case in which it is uncontradicted that he only did 10% of the work, as well as the untenable position that he should somehow be entitled to a portion of the fees from the Hawkins case. In any event, Snow and Harrell received attorney fees in the Hawkins case because they had a contract with Hawkins's heirs. Similarly, Snow and Harrell have a contract with Heather Franklin. Both Hawkins's heirs and Heather Franklin chose to be represented by Snow and Harrell; neither chose to be represented by Waller.

¶25. Nonetheless, Waller's argument that Snow and Harrell's work on the Franklin case was only a result of their work on the Hawkins case has some appeal. Its force is diminished, however, by the testimony of defense counsel John Toney. Toney testified that the facts in the two cases were almost identical, thus most of the discovery and investigation was necessary for both cases. However, Toney testified that in the defense's opinion the damages issues in the two cases were different. They believed the Franklin case was worth more than Hawkins because a minor child was left fatherless in Franklin, and Snow's work on the Franklin heir's damage claim differed from that of the Hawkins heirs.

¶26. Waller's primary contention for entitlement to all the attorney fees is that he is counsel of record representing all heirs, because he filed the first wrongful death lawsuit. He argues that strict construction of the wrongful death statute, Miss. Code Ann. § 11-7-13, is required and one suit for the same death is the focus of the legal issues before the Court, citing *Pannell v. Guess*, 671 So.2d 1310 (Miss. 1996) and *Smith v. Garrett*, 287 So.2d 258 (Miss. 1973). He contends that the first lawsuit filed by a legal representative excludes any

13

other lawsuits regardless of the circumstances as to the second lawsuit and regardless of any Order consolidating the second lawsuit with the first lawsuit for the purposes of trial. He argues that the only one lawsuit provision of the wrongful death statute has been upheld numerous times and is referred to as the rule "first in time, first in right." *See Southern Pine Elec. Power Ass'n v. Denson*, 214 Miss. 397, 57 So. 2d 589 (1952); *Miss. Power & Light Co. v. Smith*, 169 Miss. 447, 153 So. 376 (1934); *J.J. Newman Lumber Co. v. Scipp*, 128 Miss. 322, 91 So. 11 (1922). Waller claims this rule means that the first lawsuit has paramount right to recover all damages regardless of when or where a subsequent suit is filed.

¶27. Snow and Harrell counter that Waller's claim of entitlement based on first filing is not determinative, citing *Moreland v. Riley*, 716 So. 2d 1057 (Miss. 1998). In *Riley*, attorneys of an administratrix filed a wrongful death action. Their client was later replaced with a more appropriate administratrix and the case went to trial, producing a substantial award. The attorneys for the original (replaced) administratrix and those representing the new one both claimed the attorney fees. The attorneys of the original administratrix were unable to adduce any proof as to any work they did in the case and they were awarded nothing. On appeal, this Court affirmed because the attorneys "failed to carry [their] burden of proving entitlement to a fee" for work done on the wrongful death case. *Riley*, 716 So. 2d at 1063.

¶28. Similarly, in the case sub judice, Waller has not presented substantial evidence illustrating that the value of his services to either Jonathan or Heather warrant 100% of the

14

attorney fees. Snow and Harrell presented to the Court that, in the depositions he did attend, Waller only asked 9% of the questions, whereas Snow and Harrell asked 91%. Snow and Harrell filed 83 pleadings, while Waller only filed 10. Waller did present evidence pertaining to his involvement in the settlement of the case, alleging that he independently settled the Franklin lawsuit. However, this assertion is not supported by the record. Testimony revealed that both Waller and Snow were involved in settlement negotiations, and Waller just happened to be the one that received and communicated to the court the final settlement offer. Defense counsel Toney testified that all the defense attorneys and all the plaintiff's attorneys were negotiating the case until the last day before trial. Toney further testified that the settlement would have been the same whether they had dealt with Waller or with Snow.

¶29. Moreover, a good settlement was achieved by the foundation laid by the diligent preparation of Snow and Harrell. Had they not been prosecuting the case, the plaintiffs would not have been able to use the leverage of punitive damages[6] and the plaintiffs would have had no expert testimony.[7] In other words, the case would not have been prepared for trial and, consequently, would have been worth considerably less on the eve of trial. In this

---

[6]Snow and Harrell, not Waller, responded to the defendant's motion for summary judgment on punitive damages; Snow and Harrell, not Waller, responded to the truck drivers's motions for protective orders, thereby securing their presence at depositions and developing a case for gross negligence.

[7]Though he designated expert witnesses, Waller never presented the defense attorneys with any expert witness reports.

Court's opinion, Waller did not contribute more to settlement of the case than did Snow and Harrell.

¶30. When Judge Kitchens ordered the two Franklin cases joined, he also ordered that Snow and Harrell participate in working up the case. In reliance on that order and the chancery court approved contract, Snow and Harrell diligently pursued the wrongful death case. Mississippi law is clear that an attorney who has the authority to pursue the wrongful death case and then works the case up to a successful conclusion is entitled to a fee. *In re Estate of Brewer*, 755 So.2d 1108 (Miss. Ct. App.1999) (attorney who had a court approved contract and diligently pursued wrongful death case was entitled to his fee notwithstanding that the administratrix he represented was not an heir and not entitled to any of the proceeds). The attractive settlement position created by Snow and Harrell, as well as their thorough investigation of the case and preparation for trial contributed significant benefits upon both heirs and to award Waller all the attorney fees is to give him an undeserved windfall.

¶31. In *Pannell v. Guess*, 671 So.2d 1310 (Miss. 1996), the father of the deceased hired counsel and brought suit for the wrongful death of his son. Although there were six heirs, the contract was signed only by the father. The other five heirs were unrepresented. After the attorney obtained a settlement of $150,000, the chancellor ruled that the attorney was entitled to his contingency fee only from the father's share of the settlement. On appeal, this Court reversed. Because the other heirs derived benefit from the attorney's actions and the heirs acquiesced to the amount negotiated by the attorney, this Court held the chancellor

16

should have conducted a hearing in which the attorney could prove his right to compensation from the other heirs. *Pannell*, 671 So.2d at 1315. Similarly, Waller acquiesced in Snow and Harrell's participation in this case, and his client benefitted from this acquiescence. Though it is true as Waller argues, that he opposed the consolidation of the cases, Waller allowed Snow and Harrell to continue to be involved in the case. The defendants knew Snow had diligently prepared the case for trial and was prepared to proceed to trial and verdict. They were aware of the possibility of a high punitive damage award based on the outcome in the Hawkins case, and Snow and Harrell have proved that their efforts in the prosecution of the case conferred substantial benefits on all the Franklin heirs.

¶32.    As in *Brewer*, Snow and Harrell's contract with Heather and the estate was approved by the chancery court before the suit was filed. Waller's was not. Snow and Harrell ask this Court to grant them priority based on that approval. *Pannell* illustrates that obtaining court approval of contingency contracts in wrongful death cases is the preferred procedure. 671 So. 2d at 1315. However, as Waller points out, the wrongful death statute does not require the plaintiff to obtain authorization to bring a lawsuit. In addition, the statute plainly states that the estate is not a part of the wrongful death claim, except for funeral, medical, and other related expenses. Therefore, Snow and Harrell's approved contingency contract, though the preferred procedure, gives them no priority in this dispute. In any event, this issue is really a non-issue in that Snow and Harrell are entitled to compensation based upon their contribution to the case and their justifiable reliance on Judge Kitchens's November 1999 order.

## II. WHETHER THERE WAS AN IMPLIED CONTRACT BETWEEN WALLER AND SNOW AND HARRELL FOR THE PAYMENT OF ATTORNEY FEES.

¶33.    Snow and Harrell's next argument for reversal is that after the November 1999 order was entered allowing them to participate in the lawsuit, Waller's acquiescence in the arrangement by allowing them to assume the majority of the work in getting the case prepared for trial created an implied contract.

¶34.    When a party accepts and uses the services of an attorney knowing that compensation is expected, a contract will be implied for the payment of attorneys fees.  *See, e.g., **In re Estate of Stewart***, 732 So. 2d 255, 259 (Miss. 1999); ***West Ctr. Apartments Ltd. v. Keyes***, 371 So. 2d 854, 858 (Miss. 1979); ***Collins v. Schneider***, 187 Miss. 1, 192 So. 20, 23 (1939); ***Jones Bayou Drainage Dist. v. Sillers, Clark & Sillers***, 129 Miss. 13, 91 So. 693, 694 (1922).  A contract that arises from the conduct of the parties, also known as a contract implied in fact, has the same legal effect as an express contract.  It carries as much weight as, and is as binding as an express contract.  ***Magnolia Fed. Sav. & Loan Ass'n v. Randal Craft Realty Co.,*** 342 So.2d 1308, 1312 (Miss. 1977); ***Ahern v. South Buffalo Ry.***, 104 N.E.2d 898 (N.Y. 1952), *aff'd,* 344 U.S.367, 735. Ct. 340, 97 L. Ed. 395 (1953); Restatement (Second) of Contracts § § 4 cmt.

¶35.    In ***Old Men's Home, Inc. v. Lee's Estate***, 191 Miss. 669, 4 So.2d 235, 236 (1941), this Court pointed out that a quasi or constructive contract rests on the equitable principle that a person shall not be allowed to enrich himself at the expense of another.  It is an obligation created by law, in the absence of an agreement, when and because the acts of the

18

parties or others have placed in the possession of one person money under circumstances that in equity and good conscience he ought not to retain and which in justice and fairness belong to another. Furthermore, in *Cooke v. Adams*, 183 So. 2d 925 (Miss. 1966), this Court held that any conduct of one party from which the other party may draw the inference of a promise is effective as such and the conduct of the parties is viewed as a reasonable man would to determine the existence or not of the contract implied in fact. To collect under an unjust enrichment or quasi-contract theory, the claimant must show "there is no legal contract but . . . the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain, but should deliver to another." *Estate of Johnson v. Adkins*, 513 So.2d 922, 926 (Miss. 1987) (*quoting* **Hans v. Hans**, 482 So.2d 1117, 1122 (Miss. 1986)).

¶36. Waller objected to Judge Kitchens's November 1999 order allowing Snow and Harrell to participate, and subsequently asked the court to reconsider. However, he took no further steps to voice his disapproval until it was time to split the attorney fees. Had Waller wanted to preserve his objection to Snow and Harrell's participation and avoid the appearance of acquiescence, he should have advised Snow, Harrell, and Judge Kitchens that at the end of the case he would again dispute any claim for attorney fees and, more importantly, he should have undertaken to prepare the case for trial. However, as the previous discussion makes clear, Waller allowed Snow to do virtually all of the work. One cannot knowingly accept the services of an attorney and object for the first time when the bill comes due. *Stoner v. Yandell*, 188 So. 564 (Miss. 1939). Waller knew that Snow and

Harrell did the work expecting to be paid when the recovery was received. Under these circumstances, the law will imply a contract.

**III. WHETHER JUDGE PIGOTT ERRED IN VACATING THE NOVEMBER 1999 ORDER OF JUDGE KITCHENS AFTER SNOW AND HARRELL RELIED ON IT IN PREPARING THE CASE FOR TRIAL.**

¶37. Under Circuit Court Procedural Rules, any order signed during the course of the proceeding is not final and can be changed during the course of the action and prior to a final judgment. Final judgment was entered by the circuit court on April 23, 2001; however, the court retained jurisdiction "to the extent required to resolve the pending issues relating to the apportionment of attorney fees and expenses among the various counsel for plaintiffs." Therefore, as Judge Kitchens's November 1999 order was not final or dispositive, it was subject to change by Judge Pigott, who had the authority and duty to change or rescind any orders as required by the law and facts.

¶38. Judge Pigott held that while Heather had a right to join in the lawsuit filed by Jonathan, the control of the suit was in the hands of Jonathan and his attorneys since his suit was filed first. He held that since all heirs-at-law interests were represented in this one lawsuit, only one attorney's fee was payable out of the recovery. Judge Pigott also ruled, "The Circuit Court had no authority to order attorneys Snow and Harrell into the Franklin case and no authority to adjudicate the division of attorney's fees prospectively before recovery. Circuit Courts should not interject attorneys into another attorney's cases and require a division of fees."

20

¶39.   Judge Kitchens's November 1999 order consolidated the wrongful death cases of Jonathan and Heather (and the estate) and declared that the lawyers would handle the case as co-counsel and receive compensation based upon their contracts with their respective clients.  This order did not divide attorney fees, as Judge Pigott held, rather it merely followed the wrongful death statute by stating that any recovery would be divided equally among the two heirs.  The November 1999 order recognized the statutory requirement of equal distribution among the heirs; it left the compensation of the attorneys to their respective employment contracts.

¶40.   Snow and Harrell argue that Judge Pigott's vacating Judge Kitchens's November 1999 order was in error because Judge Kitchens's prior order was proper and reasonable. They argue the prior order: (1) protected the interest of both clients by allowing the lawyer of their choice to represent their interest; (2) it was fair to both sides because it gave the benefit of their respective contracts and gave a clear statement of the basis for each lawyer's ultimate compensation; (3) it was reasonable; (4) it followed the wrongful death statute regarding joinder; and (5) it contemplated that all attorneys would work together for the mutual benefit of their respective client.  This Court agrees.

¶41.   The lawyers justifiably relied upon this order for over a year and a half as they prepared the case for trial.  Judge Kitchens's November 1999 order was well within his discretion. The wrongful death  statute, Miss. Code Ann. § 11-7-13, states that "all parties interested may join the suit."  *Allen v. Baker*, 327 F. Supp. 706, 709 (N.D. Miss. 1968). Judge Kitchens had the authority to consolidate the two cases. *Mobile Jackson & Kansas*

21

***City R.R. v. Hicks***, 91 Miss. 273, 46 So. 360, 397 (1908) (nothing improper in consolidating wrongful death suit brought by widow with that brought by widow and children). *See also* ***Classic Coach, Inc. v. Johnson***, 823 So.2d 517 (Miss. 2002); ***Robinson v. Cobb***, 763 So. 2d 883 (Miss. 2000). The parties disagreement is not with Judge Kitchens's authority to consolidate the two cases, but lies ultimately in his allowing Snow and Harrell to participate in the joined action and his apportionment of the attorney fees according to each attorney's contract with their respective client.

¶42. The wrongful death statute does not by its express terms limit the case to one lawyer or otherwise limit each heir's choice of her own counsel. This Court has interpreted the statute to mandate that the wrongful death heir who first files a wrongful death claim is entitled to prosecute that claim to its conclusion. ***Thornton v. Ins. Co. of N. Am.***, 287 So. 2d 262, 265 (Miss. 1973). *Cf.* ***J.J. Newman Lumber Co. v. Scipp***, 128 Miss. 322, 91 So. 11 (1922) (abating suit by widow after suit by administratrix); ***Mobile Jackson & Kansas City Railroad Co. v. Hicks***, 91 Miss. 273, 46 So. 360 (1908), *aff'd*, 219 U.S. 35, 31 S.Ct. 136, 55 L.Ed. 78 (1910). However, we have found no authority for the proposition that the statute does not allow heirs to be individually represented by counsel of their choice. Judge Kitchens's order did not "interject attorneys into other attorney's cases" as Judge Pigott held, rather it simply recognized that already established relationship. The representation of Heather by Snow and Harrell simply came with the joined case.

¶43. Following Judge Kitchens's order, Snow and Harrell expended substantial time and labor preparing the case for trial. They were obligated both by ethical and contractual

22

obligations to their client and by Judge Kitchens's order to diligently and zealously represent their client's interest and prepare for trial. Judge Kitchens's order promoted certainty by setting both the scope and limit of recovery of attorney fees at the outset. It enabled all parties' reasonable expectations to be realized. The attorneys' recovery was based upon their performance and the strength of their case and the client's choice of attorney to represent them was respected.

¶44.    On the other hand, Judge Pigott's ruling that fees can only be determined at the end in effect reverses not only the November 1999 order but also the chancery court's order that approved the contingency contract at the outset. Judge Pigott did not have the benefit of any new information that justified vacating Judge Kitchens's order. In fact, the information before Judge Pigott, that Snow and Harrell had done 90% of the work, justified upholding rather than vacating Judge Kitchens's order.

¶45.    Judge Pigott's order creates a dilemma for lawyers involved in wrongful death cases. They are contractually and ethically bound to diligently pursue their client's claims but are left not knowing if they will be paid for their effort if their client was not the first to file. Judge Pigott's order not only reaches an inequitable result; it penalizes heirs who want their own lawyer to represent them and are willing to pay them from their own recovery.[8]

---

[8]Moreover, Judge Pigott's order creates the potential for a serious conflict of interest. Where, as here, the attorneys dispute the paternity of the heirs, combining the case and requiring the first attorney who filed to thereafter represent all of the heirs puts that attorney in an awkward position. Does she continue to press the paternity issue for the benefit of her initial client, or does she drop that inquiry and now zealously represent both her initial client and her new client, whom she suspects may not be a legitimate heir?

## IV. WHETHER WALLER CAN BE AWARDED ATTORNEY FEES FROM HEATHER FRANKLIN, DESPITE THE FACT THAT HE HAD NO CONTRACT WITH HER.

¶46. In their fourth assertion of error, Snow and Harrell argue that Waller is not entitled to attorney fees from Heather because he had no contract with her. Precedent has established that an attorney who does work that enhances the value of a settlement should be paid for his efforts, even in the absence of a contract, and one who does nothing should not be given a windfall, even if a contract exists. *Pannell v. Guess,* 671 So.2d 1310 (Miss. 1996). *In re Estate of Brewer*, 755 So.2d 1108 (Miss. Ct. App.1999). Moreover, in *Pannell* this Court held that an attorney who brings a wrongful death suit but has a contract with only one of the heirs does not bind the other heirs with whom he does not have a contract. This Court went on to concede that the lawyer under contract with one of the heirs may nevertheless be entitled to compensation from the other heirs if they derived a benefit from the services. This Court remanded that case and instructed the chancellor to revisit the issue of attorneys fees and award only what was reasonable under the circumstances. "[I]f he should find that the contingency fee was not reasonable, then he may assess a fee based on quantum meruit." *Pannell v. Guess*, 671 So.2d at 1315. It follows from *Pannell* that an attorney who successfully prosecutes a wrongful death claim without representing all of the heirs must prove that he has earned a fee from the proceeds distributed to all of the heirs.

¶47. The efforts of Snow and Harrell on behalf of all the wrongful death beneficiaries are uncontradicted. The fees sought by them are only those to which they are entitled under the court approved contract with Heather Franklin. Snow and Harrell would be entitled to

24

compensation even absent the Chancellor approved contingency contract and Judge Kitchens's order, since they have established their entitlement on quantum meruit grounds.

¶48.　In contrast, Waller had no contract with Heather Franklin and he did not put on any proof, at the trial level, in his brief, or during oral argument to establish that he is entitled to fees from the daughter based upon any work done on her behalf. He has made no quantum meruit showing. He has only relied on having been the first attorney to file a wrongful death suit. *Pannell* teaches that this is not enough.

### CONCLUSION

¶49.　Judge Pigott erred by vacating Judge Kitchens's November 1999 order. Judge Kitchens's joinder of Jonathan and Heather Franklin's lawsuits was within his authority and was proper under the wrongful death statute's mandate that there can be only one lawsuit based upon a wrongful death. Allowing Heather (and the estate) to retain the attorneys she chose was not at odds with the statute's mandate. There was still only one lawsuit. Nothing in the statute prohibits parties in a wrongful death action from being represented by the counsel of their choice.

¶50.　For these reasons, Judge Pigott's order is reversed and Judge Kitchens's 1999 order reinstated.

¶51.　**REVERSED AND RENDERED. APPELLEE, BILL WALLER, SR., SHALL DEPOSIT THE SUM OF $430,000.00 INTO THE REGISTRY OF THE CIRCUIT COURT OF RANKIN COUNTY, MISSISSIPPI, WITHIN 10 DAYS OF THE DATE OF THIS MANDATE, AND, UPON RECEIPT OF THOSE FUNDS, THE CIRCUIT CLERK OF RANKIN COUNTY SHALL PROMPTLY DISBURSE THOSE FUNDS TO APPELLANTS FRED HARRELL, JR. AND PAUL SNOW.**

**PITTMAN, C.J., McRAE AND SMITH, P.JJ., COBB, EASLEY, CARLSON AND GRAVES, JJ., CONCUR. WALLER, J., NOT PARTICIPATING.**